# Exh. C

to

## Provisional MOTION to
## WITHDRAW PLEA & DISMISS CASE

_____

### 10 Step Program Used by IRS/DoJ
### to Enforce the Income Tax on Nontaxpayers

# <u>The Ten Step Program</u><br><u>Used by IRS/DoJ to Enforce the</u><br><u>Income Tax on Nontaxpayers</u>

**Authors:**
  **Michael B. Ellis**
  **Robert A. McNeil**


**Revised:**
  **November 27, 2020**

Described herein is the program IRS uses to enforce the income tax on nontaxpayers IRS derisively labels "non-filers".  In simplified summary, IRS never prepares "substitute income tax returns", or "summary records of assessment" concerning targeted nontaxpayers/"non-filers" on any date shown in IRS' invariably falsified digital or paper records.

IRS' Automated Substitute For Return program, (ASFR), run by IRS' <u>Collections</u> Division, used the Sun MicroSystems Platform (SMSP) to automatically falsify the Individual Master File (IMF) records of targeted nontaxpayers IRS labels "non-filers".  IRS' <u>Examinations</u> Division, however, uses the Audit Information Management System (AIMS) in a more labor-intensive approach.  But both variations result in similarly falsified digital (IMF) annual tax "modules" concerning victims, upon which IRS bases subsequent creation of falsified paper documentation for courts.  Both methods are detailed below, and documentary evidence (beyond that attached) is available on request.

When IRS uses the <u>AIMS software</u> to justify actions concerning nontaxpayers, these steps are involved:

**Step 1:     Improper Presumption Made**
**Step 2:     IRS Improperly Imports the Phrase "SFR 150" into an IMF**
**                 Module, using an override code**
**Step 3:     IRS Conceals that improper entry**
**Step 4:     IRS "Assigns" the phantom Return to Examinations via a TC 420**
**Step 5:     IRS Creates Documents to Justify "Changing" the "0.00" Amount Due**
**Step 6:     Exams Creates an "SFR Package", Claiming 6020(b) as Authority**
**Step 7:"Package" Deficiency Numbers are entered into IMF as TC 300 or**
**                 290**
**Step 8:     Creation of "Self-authenticating", False Certifications for Use by DoJ**
**Step 9:     High Level IRS Attorneys Knowingly Approve Entire program**
**Step 10:  DoJ Conceals the Scheme, Uses Its Fruit, and Profits from It**

When IRS uses the <u>Sun MicroSystems Platform</u> to falsify IMF records,[1] Steps 2-7 are fully automated, as detailed in IRS' Internal Revenue Manual, sections 5.18.1.1, et seq., (link here www.irs.gov/irm/part5/irm_05-018-001r ), and discussed below.

Our core discovery is shocking but simple.  IRS' all-controlling software, known as the Individual Master File, (IMF), appears to have been written to prevent IRS from entering claimed "deficiency" amounts unless entries are previously made into an IMF annual module concerning a targeted "non-filer", which produce the appearance that 1.) IRS supposedly

---

[1]  **IRM Section 5.18.1.3.1 (04-06-2016) ASFR System Overview**  "ASFR is a stand-alone system residing on a Sun Microsystems platform at the Enterprise Computing Center (ECC)."

received a return from a targeted "non-filer" (when IRS didn't), and that 2.) IRS supposedly prepared, on claimed dates, a substitute for return 1040A for the "non-filer" (when IRS didn't).

IRS paper records are later fabricated, based on the underlying falsified digital records, to reflect those "facts", and to reflect as well (in forfeiture cases) IRS' pretended preparation of "summary records of assessment" on claimed dates, (when IRS didn't). The falsified paper documents are used by the DoJ, in forfeiture and criminal prosecutions, to conceal the invariable falsification of IRS' falsified digital (IMF) records, which controls the interaction of the Service with targeted Americans. DoJ is fully aware of the program, and uses the falsified records while concealing the exculpatory evidence of the program's existence, as shown below.

We provide ten documents to support our claim IRS invariably falsifies IMF modules concerning targeted "non-filers" to bypass the software protections written into the IMF software.

This document is "spirally" organized, to scaffold a reader's knowledge. We review the scheme three times, adding detail to each review.

WHAT DIFFERENCE DOES IT MAKE?

The inference derived from the existence of the systematic falsification of IRS records is staggering. Since 1.) Congress cannot authorize the commission of crimes by law enforcement,[2] and since 2.) IRS _invariably_ falsifies the annual "module" of the Individual Master File records concerning targeted "non-filers"/nontaxpayers to make it appear IRS supposedly received a return from a "non-filer" when it didn't, that IRS prepared a substitute income tax return when it didn't, etc., Congress did not impose any duty upon "non-filers" to file income tax returns.

Said differently, since enforcing the income tax on those who don't voluntarily provide sworn 1040's invariably requires IRS to commit computer and document fraud, the program's existence infers Congress never ACTUALLY imposed any duty upon "non-filers" to file returns.[3] The program exists to conceal Congress' failure to impose any actual duty on

---

[2] In _Olmstead v. United States_, Justice Brandeis wrote: "When these unlawful acts were committed, they were crimes only of the officers individually. The Government was innocent, in legal contemplation, for no federal official is authorized to commit a crime on its behalf," and: "The Eighteenth Amendment has not, in terms, empowered Congress to authorize anyone to violate the criminal laws of a State. And Congress has never purported to do so. The terms of appointment of federal prohibition agents do not purport to confer upon them authority to violate any criminal law. Their superior officer, the Secretary of the Treasury, has not instructed them to commit crime on behalf of the United States. It may be assumed that the Attorney General of the United States did not give any such instruction."

[3] 26 U.S.C. §1: "There is hereby imposed on the taxable income of every...." The phrase "taxable income" has never been defined by IRS. Without close analysis, it _looks like_ a duty was imposed. But, was it? We don't answer that question. We merely present facts.

Americans, and IRS' lack of authority to enforce the income tax on those who don't voluntarily file returns.

That said, however, this is a FACT-BASED discussion of the income tax enforcement scheme, not based on legal arguments raised by typical income tax challengers.  That means we are not attempting to prove whether Congress imposed the income tax on Americans.  We are only proving the FACTS IRS commits layered fraud to enforce the income tax on those who supposedly "fail to file" sworn returns.  And, our extensive experience in litigation over the past seven years PROVES government-employed attorneys have no answer to our factual claims, since based exclusively on IRS-provided manuals, FOIA disclosures, litigation discovery and mailings to victims.  [We will discuss separately our quiet litigation to date across the country, which offers perverse confirmation of the correctness of our discoveries.]

**Part A.  Overview, 4 Background Matters, Summary**

**Overview**

Until Sept. 2017, IRS' <u>Collections</u> Division used a fully automated software program, running on the "Sun MicroSystems Platform", (SMSP), and IRS' <u>Examinations</u> Division still continues using the Audit Information Management System (AIMS) software, to insert certain critical, improper entries in IRS' Individual Master File annual records (IMF) concerning targeted "non-filers".

The IMF controls all interaction by the Service with Americans, so entry of data in an annual tax module is strenuously protected.  But no similar protections are written into the AIMS or SMSP, both of which can modify IMF annual records.[4]

Computer/document fraud occurs at several stages of the income tax enforcement process, as shown below.[5]

As a starting point, please take a moment now to review "**Doc. A**", a "6020(b) Certification" prepared by IRS concerning Michael Ellis and 2007.  Please note carefully the date of its preparation: "04/12/2010", the importance of which will become apparent as we review the AIMS/IMF sequence used by IRS' Examinations Division.

**Four (4) Background Matters**

**a. The Individual Master File (IMF), AIMS and SMSP**

---

[4]  Before the ASFR computer program was begun in 1986, the Service accomplished the same result with "dummy returns", blank paper 1040s used as placeholders to make it appear a return existed which IRS could pretend to audit.

[5]  Documentation to support each fact set forth herein is provided, or can be more fully upon request.  And Mr. Robert McNeil, a forensic accountant with forty years of experience, will attest to each uncovered step in the institutionalized, invariable program in minute detail.

As noted already, IRS constructed the Individual Master File (IMF) database to control the interaction of the Service with Americans and with other entities. The related AIMS database (Audit Information Management System) was created to track IRS audits made by the Examinations Division of IRS. The SMSP (Sun MicroSystems Platform) was created for use by IRS' Collections Division, and comprises a fully automated sequence that falsifies data entries in IMF annual "modules" concerning targeted nontaxpayers, and simultaneously produces falsified, incorrectly dated, unsigned documents IRS labels as "Proposed Assessments", "30 day letters" and "90 day letters", as explained below.

After falsifying IRS' digital IMF records, issuing letters to victims, etc., IRS prepares falsified "Certificates of Assessments, Payments and Other Matters" for use in Court and to prevent victims from discovering and proving the underlying digital fraud. In other words, IRS prepares falsified paper documents for court proceedings to conceal the underlying fraud whereby the IMF digital records are falsified.

Each tax year, a separate file is opened in the IMF for a taxpayer, which file IRS calls a "tax module". [See, for example, **Doc. H**, a printout of the entries made in a module concerning Ellis and 2007. There are many variations of printouts of IRS records available. This one is labeled by IRS as "IMF MCC TRANSCRIPT-SPECIFIC" and was prepared on 05-28-2010.]

An annual tax module concerning a person can be opened in the IMF using several different transaction codes, including "140", "971", etc. The module can be either opened "by hand" or automatically by the SMSP, as part of the "Automated Substitute For Return" program.

Every event that occurs between IRS and a taxpayer or a nontaxpayer/"non-filer" is memorialized in an IMF annual module by entry of three digit "transaction code" numbers. This process ensures absolute accuracy and tracking of accounting.[6]

For example, as defined by the IRS in "**Document 6209**", (the oddly named "decoder manual" for the IMF), a transaction code numbered "150" is the code entered into an IMF module when IRS memorializes that a person filed a return that year. [See **Doc. 6209**, Pg. 8-9.]

Although the phrase "**SFR** 150" appears in all modules concerning targeted nontaxpayers/"non-filers", [See for example **Doc. F**, attached, Pg. 1.], the exact phrase "SFR 150" is never defined by IRS, despite multiple references to it appearing in IRS documentation.[7]

---

[6] Between the IRS' Processing Codes and Information Manual (a.k.a. "Document 6209"), the Internal Revenue Manual, and the AIMS Reference Guide, each possible three-digit code that can appear in an IMF is discussed and described as to its meaning and function.

[7] See **Doc. 6209**, Pg. 12-13, IRS instructs employees: "Use an original return blocking series for cases in which the TC 150 is an SFR/Dummy TC 150", and in the 6209 Manual, Pg. 13-13, the letters "SFR" are defined by IRS as "substitute for return". Interesting phrase "SFR/dummy". See Footnote 4.

But, IRS has repeatedly, publicly conceded, it has no authority to execute substitute **INCOME TAX** returns under 26 U.S.C. §6020, as shown next.

### b. Authority to Perform Substitute Returns does NOT include INCOME Tax Matters

In Section 5.1.11.6.7 of IRS' Internal Revenue Manual, ("IRM", the "Bible" to IRS employees), IRS' Commissioner claims to have received delegated authority pursuant to "Treasury Delegation Order 182" to calculate and perform "substitute for returns" (SFR's) in certain, narrow instances where none have been filed, but should have been.  This authority is derived from a statute passed by Congress: 26 U.S.C. §6020(b).  But, although the text of TDO 182 (now TDO 5-2) has never been published by IRS, the authority to perform substitutes for return is fully revealed by IRS in IRM 5.1.11.6.7 and two other places,[8] unequivocally stating that said authority is limited to "**employment, excise and partnership taxes**", (unless a taxpayer "elects" for IRS to prepare a substitute income tax return for him, as shown below). [Link here: http://www.irs.gov/irm/part5/irm_05-001-011r-cont01.html, scroll down to 5.1.11.6.7 "IRC 6020(b) Authority".]

Thus, it now appears IRS *unlawfully* extends the authority given in 6020(b), by publicly pretending that said authorization justifies creating substitute **INCOME** tax returns, despite IRS' published concessions it has no such authority. And in fact, as we discovered, IRS *never prepares substitute income tax* returns on any date shown in IRS records concerning targeted "non-filers".  IRS uses computer and document fraud to conceal its lack of duly-delegated authority to prepare substitute income tax returns, as further explained below.

### c. Three Types of Individuals

For purposes of this discussion concerning **income** tax, there are three types of "individuals" about whom IRS maintains IMF records:

1.) those who file "1040" returns voluntarily,

2.) those who elect/ask IRS to compute a "1040A" for them, pursuant to §6014, and

3.) those who IRS claims supposedly "fail" or "refuse" to file anything, i.e. nontaxpayers IRS denigrates by labeling "non-filers".

---

[8]  The limitation on the authority to perform substitute returns in only employment, partnership and excise matters is precisely confirmed in both the Revenue Officer's Training Manual, [See **Doc. D**, pgs. 1-2 attached], Unit 1, Page 23-2: "The IRM restricts the broad delegation shown in figure 23-2… to employment, excise and partnership tax returns because of constitutional issues.", and in the Privacy impact Assessment IRS issues concerning 6020(b). [Link here: http://www.irs.gov/pub/irs-pia/auto_6020b-pia.pdf]

IRS' highly complicated, fully encoded IMF, AIMS and SMSP computer programs were created to provide a systematic method to memorialize any/every possible event involving income taxes and taxpayers.

Each year when a person voluntarily files a fully executed sworn "1040" return, the entry of a transaction code "150" is made in the IMF record of that person for that given annual module (tax year), to memorialize the taxpayer's filing.

To handle situations when a taxpayer "elects"/chooses for IRS to compute and file a return for them in any given year, as authorized at 26 U.S.C. §6014, or for situations when IRS prepares substitute returns in excise, employment or partnership matters, IRS software engineers created a transaction code "SFR 150", to document that preparation.  That is, with respect to elections by taxpayers under §6014, IRS uses a certain sequence of data entries made in AIMS to produce the phrase "SFR 150" in an IMF module to memorialize *the request by a taxpayer* that IRS prepare a substitute for return for her/him.  IRS then produces the substitute return requested, sending copies to the requestor.

But, how does IRS deal with nontaxpayers, i.e., so-called "non-filers"?  As we shall see, IRS misapplies the computer procedure created to process §6014 elections.  But first, let's take a short side trip.

### d. The Fifth Amendment – Does it Apply?

The Fifth Amendment to the Constitution makes it unlawful for the Government to compel Americans *during the course of a criminal trial* to provide evidence which the Government could use against them in court.[9]  But, before any criminal proceeding is instigated, IRS hangs over the heads of all Americans the threat of criminal prosecution if they don't voluntarily provide a tax return.  Yet, how can filing an income tax return be both voluntary and mandatory simultaneously?

That irreconcilable conflict is resolved through surreptitious digital and document fraud, which, since invariable, has been approved at the highest levels of the Service and the DoJ.  IRS uses computer fraud to quietly rape the due process rights of Americans, and not one in a million can articulate it.

---

[9]  A Form 1040 is sworn as to its accuracy, so it is "evidence", (and it can't be compelled).  In *Hale v. Henkel*, 201 U.S. 43, (1906), still unreversed, the Supreme Court stated: "The individual may stand upon his constitutional rights as a citizen.  He is entitled to carry on his private business in his own way.  He owes no duty to the State or to his neighbors to divulge his business, or to open his doors to an investigation, so far as it may tend to criminate him.  He owes no such duty to the State....Among his rights are a refusal to incriminate himself..."   Gov't. lawyers get around that by claiming the 5th Amendment right only applies DURING criminal prosecutions, hence, they claim it cannot be asserted before a prosecution begins.

To handle many routine situations when someone "fails" to "voluntarily" file a return that IRS thinks should have been filed, IRS stood up the "Automated Substitute for Return Program" (ASFR) in 1986, which was run by IRS' Collections Division.[10]  That program used the Sun MicroSystems Platform, (which was suspended in Sept. 2017, although it may have since been restarted.)  But, IRS also created the sequence of steps whereby the Examinations Division can use the Audit Information Management System (AIMS) software to falsify the all-controlling IMF software. Either method comprises an IRS record falsification scheme so carefully layered it is likely no one at IRS knows all the moving parts.

In brief summary of the core initial fraud, IRS "games" its sophisticated IMF database, using either of its related databases, AIMS or SMSP, to create the  appearance IRS received a return from a "non-filer" and that IRS prepared a substitute income tax return on claimed dates, despite the well-camouflaged TRUTH that IRS never prepares substitute income tax returns on any date, let alone those shown in IMF records concerning targeted "non-filers"/nontaxpayers.

IRS misuses the software procedure created to process legitimate taxpayer "elections" under 26 U.S.C.§6014, as proven by decoding the "Document Locator Numbers" (DLN) automatically assigned by the IMF software to each "SFR 150" transaction, as detailed below.

After studying numerous Individual Master File records used to justify attacking "non-filers", we discovered that ONLY after the initial sequence of fraudulent entries described below, will the IMF software allow later entry of claimed "deficiency" dollar amounts IRS wants to collect as supposedly owed by the "non-filer".

More specifically, IRS Examination Division employees can open a "skeletal account" in the AIMS database by entering a certain transaction code ("TC 424") simultaneously with a certain override/push code ("036").  When the skeletal module is assigned to an IRS Examiner, a sequence of entries is then kicked off between the AIMS and IMF databases, resulting in the targeted annual IMF tax module falsely reflecting the receipt by IRS of a 1040A return from a "non-filer" and the pretended existence of a substitute income tax return prepared by IRS, ("SFR 150") on a claimed, but false date.

IRS' Collections Division used/uses the Sun MicroSystems Platform to streamline the record falsification process, requiring no human participation until the entry into the IMF module (via a "transaction code" 290 or 300) of the claimed deficiency amounts, calculated originally by the SMSP without human input.

Our Government is raping the priceless protected due process rights of targeted Americans using computer fraud, concealed by document fraud (and by layered attorney fraud in courts).

---

[10]  See link: https://www.irs.gov/irm/part5/irm_05-018-001r  IRM, Part 5. Collecting Process, Chapter 18. Liability Determ. Section 1. Automated Substitute for Return (ASFR) Program.

Next is a short two-page <u>summary</u> of how both versions of the program work, to give a general feel for the language and the documentary exhibits. The full description begins on Pg. 13.

## Each Step SUMMARIZED of the AIMS/IMF Program

Now, we present a brief description of the invariable sequence IRS and DoJ use to justify attacking targeted nontaxpayers/"non-filers", when using the AIMS software. [A separate description is provided below of the sequence used when IRS' Collections Division uses the ASFR program run on the Sun MicroSystems Platform to drive the attack.]

The sequence never changes, so is "institutionalized", not *ad hoc*. Specifically, when IRS contends someone "fails" or "refuses" to file a 1040, in **Step 1**, IRS unlawfully presumes, pursuant to a certain illogical Treasury Regulation (detailed below), that the person supposedly filed a return anyway, showing a zero ("0.00") amount due thereon.

In **Step 2** of the program, if the AIMS software is being used, IRS improperly employs a computer procedure created to process elections under 26 U.S.C. §6014 when people ask IRS to prepare a **1040A** for them, which procedure includes use of an overriding "Push Code 036."

That is, after entering into the "Audit Information Management System" (AIMS) database a transaction numbered "424" simultaneously with the override "push code 036", that sequence of two simultaneous transactions automatically produces in the targeted IMF annual module concerning a victim, the phrase "Return Received Date" with a corresponding claimed date, even though IRS claims the target is a "non-filer", i.e., she/he filed no return.

In **Step 3**, IRS conceals the 424/036 transaction, by entering a 425 transaction.

In **Step 4**, when the module/"account" is assigned to a particular Examinations Division employee via a "420" transaction, precisely 11 days later, the phrase "SFR 150" automatically appears in the targeted IMF record, ("SFR" means substitute for return), even though no substitute income tax return was ever prepared by IRS on any date, let alone those shown in IRS' IMF records concerning a "non-filer".

Said differently, when the Examinations Division is involved and uses the AIMS software to initiate an attack on a "non-filer", the related IMF module concerning a tax year related to the "non-filer" is altered to reflect that the person supposedly requested IRS to perform a **1040A** "substitute for return" (SFR) on the person's behalf, and that one was supposedly prepared,

despite the fact no such request was made, nor was any substitute income tax return 1040A ever prepared.[11]

In **Steps 5-7** of the AIMS/IMF sequence, IRS creates a set of paper documents government attorneys label as a "Substitute for Return package" (a.k.a. "SFR package") which the attorneys falsely infer to be a substitute **income tax** return.  However, no IRS employees, even those who make such "packages", ever swear to have prepared a substitute **income tax** return.  [See **Docs. A** and **I** attached, which are two of the documents invariably assembled as part of an "SFR package."  **Doc. A**, a "Form 13496", is the covering "certification" of a typical "package"; **Doc. I**, is an "Income Tax Examination Changes" Form 4549, where upon an IRS Examinations Division employee calculates the supposed "deficiency amount" owed by the targeted nontaxpayer. Please bear in mind IRS **has** unarguable authority to prepare "SFRs" in excise, partnership and employment matters, but not in income tax matters, _unless_ a taxpayer elects IRS to prepare one.  This explains why Government attorneys never use the full phrase "substitute income tax return", but always use the misleading acronym "SFR", which IRS unarguably HAS authority to prepare, but **only** in employment, excise and partnership tax matters, or upon the election of a taxpayer.]

After **Step 7**, when the "deficiency amount", penalties and interest supposedly due are entered/memorialized in the IMF record for that year via "transaction codes" (TC) "**300**", "**170**" and "**160**" respectively (as shown below), in **Step 8** another IRS employee looks at that tax module concerning the targeted victim, which module now contains the claimed deficiency amounts supposedly due.   Then the employee creates a so-called "self-authenticating certification" as to what she sees. [See, for example, **Doc. J**, a Form 4340 "Certificate of Assessments, Payments and Other Specified Matters."]

As would be expected in a white collar operation directed and approved by attorneys, the person who creates the "Certificate", (in **Doc. J**, a Ms. "Denise Bradley"), does not identify the person ("Maureen Green") who computed the supposed "deficiency" amount as part of the "SFR package", nor the date of Green's work, April 12, 2010.  [See **Doc. J**, the Form 4340 Certificate which does not mention Green or the date she computed on the Income Tax Examination CHANGES Form 4549 (**Doc. I**) the amounts supposedly owed by Ellis for 2007.]

Instead, Ms. Bradley posits in the "Certificate" she created THREE contradictory, all incorrect dates, all of which fact-finders will presume [12] to be that on which an SFR was

---

[11]  We are seeking to acquire the "source code" software documentation written by the engineers to PROVE IRS is misusing procedures created to legitimately process requests by taxpayers to prepare 1040A returns, when prosecuting nontaxpayers.  We can see that's what they are doing, but we want to use the source code to prove the transactions being used were not created for that purpose.

[12]  Unless a victim can PROVE the Certificate is falsified, the "presumption of regularity" controls.  The attorneys involved will simply say "The presumption of regularity supports

performed by IRS.  Looking at Bradley's Certificate, the type DoJ presents to courts, Ms. Green's identity cannot be determined, nor can she be summonsed to testify as to her authority to perform SFRs in income tax matters.

[In criminal prosecutions, the DoJ doesn't create certifications.  Prosecutors, instead, first simply assume, along with juries, that Congress imposed a duty upon all Americans to file and pay income tax.  Then, prosecutors use live witnesses reviewing bank records to prove that a taxpayer received the minimum amount the Government claims triggered an income tax liability.  The live witness will also testify that no return filed by the targeted victim appeared in IRS records.  But, IRS prosecutors ALWAYS conceal and refuse to provide the exculpatory digital and documentary evidence we have uncovered, which, if presented to juries, would defeat the presumption Congress imposed any duty upon "non-filers" to file returns.]

In **Step 9**, IRS deliberately "uses" its falsified records to initiate non-judicial collection activities, civil forfeitures and criminal prosecutions, in violation of 18 U.S.C. §1001, which proscribes both the falsification of federal records, and any "knowing use" of falsified records.

And finally, in **Step 10**, (in instances where IRS wants to justify forfeitures/seizures/liens/levies, etc.), IRS provides the falsified "self-authenticating certifications" to the DoJ to conceal the underlying fraud, and to shield IRS employees and experts from being cross-examined concerning the IMF, which digital record contains decodable evidence proving IRS commits concealed criminal acts to enforce the income tax.[13]

## Part B. Ten (10) STEP Program Detailed

## Step 1:  Improper Presumption Made

The scheme begins at Treasury Regulation 26 CFR §301.6211-1[14] which illogically states in pertinent part: "If *no return* is made… the amount shown as the tax by the taxpayer *upon his return* shall be considered as zero". [Emph. Added. Please read that again, slowly, then verify.]

We might justly wonder, when "no return is made" how a return can be assumed to exist and be assumed to show a zero amount due.  That contradictory language was written by IRS

---

the official acts of public officers and, in the absence of clear evidence to the contrary, courts presume that they properly discharged their official duties."  See *U.S. V. Dixon*, 672 F.Supp. 502, 508.  Dist. Court, MD Alabama 1987.  Now, victims CAN defeat that presumption.

[13]  In its "Criminal Tax Manual", as shown below, the DoJ explicitly suggests to United States Attorneys they should avoid allowing the IMF transcript to appear in court, which is a transparent instruction to attorneys to conceal the exculpatory evidence found in the IMF records.  So, the DoJ secures convictions in 97% of "willful failure to file" cases based on falsified underlying IRS records.

[14]  Carefully compare 26 CFR §301.6211 with 26 U.S.C. §6211.  Don't trust our claim.

attorneys, supposedly authorizing IRS employees to presume a return was filed by a "non-filer"(!), and which return shows a zero ("0.00") amount due.[15]

However, regulations written by IRS are meant to explain and "implement" the related statute created by Congress, which in this case is found, of course, at 26 U.S.C. §6211. The statute written by Congress in 26 U.S.C. §6211, upon which regulation §301.6211 is based, does not mention instances where "no return is made". So, the regulation "exceeds the scope" of the related statute, by supposedly authorizing IRS to presume, in cases where no return is filed, that one _was_ supposedly filed showing a "zero" amount due.

The regulation, thus, is void, as applied to Americans. More specifically, the presumption is unlawful because courts long ago held that "Although the Service has authority to issue regulations for the enforcement of the revenue laws, that authority does not extend to establishment of rules creating presumptions which are out of harmony with the statutory provision involved."[16]

It is, moreover, not a reasonable extension of the statute because it provides an enormous power to IRS which Congress did not, and could not, give: the power to presume an imaginary return has been filed when none exists. [How that presumption helps IRS is explained shortly.] Again, it was long ago decided that: "The Commissioner has no more power to add to the code (via implementing regulations) what he thinks Congress overlooked than he has to supply what Congress has deliberately omitted."[17]

Since mere regulations cannot exceed the scope of the underlying statute Congress passed, and since Treasury Regulation §301.6211 attempts to authorize an illogical presumption that a return was supposedly _filed by a non-filer_ showing a "zero" amount due, the regulation is void.

So, exactly what advantage did IRS secure for itself by writing the illogical regulation?

Although IRS has never publicly identified any source of authority to perform substitute **income tax** returns, IRS unquestionably DOES have statutory authority to AMEND any sworn income tax return that _is_ filed, (if it might be wrong in any particular), since it is _filed under oath_ as to accuracy. [See Footnote 18.] The presumption written into Regulation §301.6211 allows IRS to assume/pretend a 1040 return was filed by targeted "non-filers"/nontaxpayers, and to assume/pretend it shows a zero amount due, which, if it had been true, IRS has legitimate power to amend or "change", (exactly what IRS pretends to do in **Step 4**, _et seq._).

---

[15] Attorneys are aware of an interesting presumption in law: that if a duty is imposed, the law presumes that duty was performed. Hence, the presumption that a return was filed showing a 0.00 amount owed.

[16] _Commissioner v. Produce Reporter Co._, 207 F.2d 586, _Eastman Kodak Co. v. U.S._ 48 F Supp 357, etc.

[17] _Arkansas-Oklahoma Gas Co. v. Commissioner_, 201 F.2d 98.

Without the wholly illogical and unlawful presumption IRS created for itself at §301.6211, IRS couldn't take a single step against a person exercising their right to avoid providing the Government evidence which could be used against him/her in court, because when no return exists, IRS has nothing to use as a starting point.[18]

### Step 2: IRS Improperly Imports the Phrase "SFR 150" into an IMF Module

Based on the unlawful presumption in **Step 1**, IRS Collections Division then falsifies the IMF annual record ("module") for a given year, making the IMF record for that year show IRS supposedly performed a **1040A** substitute **income** tax return on a specific date claimed, *at the request* of a so-called non-filer. More specifically, in cases where no 1040 return is filed, and IRS feels one should have been, it appears IRS unlawfully uses the software procedure created to process legitimate instances when a taxpayer "elects" (asks) IRS to calculate a return for them, pursuant to 26 U.S.C.§6014.[19]

The Collections Division starts the process by first opening a "skeletal record" in the "Audit Information Management System" (AIMS), containing only a person's name and TIN.[20] Specifically, by entering in AIMS a transaction numbered "424", in conjunction with the entry of a "push code" numbered "036", and with a victim's name and social security number, employees kick off the typical AIMS/IMF sequence.[21]  [See **Doc. G**, TXMODA version of the IMF record for Ellis and 2007, to see the "424R" which occurred on "01132010".]

Functionally, IRS claims a 424/036 simultaneous transaction entered in AIMS is a "requisition" by the AIMS software to the Master File software, whereby AIMS requests a full

---

[18]   Please see link here:   http://www.irs.gov/pub/irs-wd/1998-053.pdf, (courtesy copy attached hereto as **Doc. L** ) the 1998 internal Memo written by IRS Assistant Chief Counsel for IRS staff only ("In no event shall it be disclosed to taxpayers or their representatives"). Therein, Page -3-, Paragraph 2, she states: "[T]he penalties of perjury statement has important significance in our tax system. The statement connects the taxpayer's attestation of tax liability (by the signing of the 1040 statement) with the Service's statutory ability to summarily assess the tax." IRS clearly has authority to verify or challenge sworn returns that are not accurate in any way. But, stated in its obverse, without a voluntary sworn statement, IRS appears to have no lawful authority to summarily assess income taxes. Hence, IRS quietly commits criminal fraud in its internal records, after assuming a return was filed.

[19]   Again, the IMF software "source code" will prove that statement, that IRS attacks targeted nontaxpayers by improperly using software procedures created to process elections under §6014.

[20]   Before the advent of the ASFR program, IRS performed the same fraud by creating "dummy", blank paper returns containing only a targeted victim's name and social security number entered.

[21]   See **Document 6209**, pg. 13-17: AIMS Push Codes "Note: using a Pushcode 036 will automatically generate a TC 150 and TC 420 on Master File." And, in **Document 6209**, pg. 12-17: ""036 Non-filer: will computer generate a substitute for return TC 150 at Master File 2 cycles after input."

matching record from IMF, upon which IRS Examinations Division employees can work, complete with statutory collection dates, (ASED, CSED), etc.  After the dual 424/036 entry is entered in AIMS, a "424" will appear in the IMF module/record juxtaposed beside a certain claimed "RET RCVD DT", (a date claimed as a "return received date"), even though no return was received on that date, or any other, from a targeted nontaxpayer.  [See **Doc. G**. TXMODA] Neither the IMF nor AIMS software is "aware" that no return exists at the time the 424/036 transaction is made.

Thus, transactions 424/036, made simultaneously in AIMS, starts a sequence whereby the targeted IMF is falsified in multiple ways.

IRS uses the AIMS database to create the impression in IMF that a 1040A return was supposedly prepared by IRS at the request of a victim. [See for example, **Doc. B**, the AMDISA "screen print" concerning Ellis and 2007, revealing that a 1040A was the supposed subject of the 424/036 transaction on "01132010", (January 13, 2010) concerning Ellis and 2007].[22]

MOST importantly, ONLY AFTER that initial set of falsifications of an IMF record will the IMF software allow later entry of "deficiency" totals computed long after the ASFR program resulted in the falsified IMF.

It is valuable to bear in mind, as noted above, that a.) IRS has never stated any source of authority explicitly empowering performance of substitute **_income_** tax returns, (unless a taxpayer elects such preparation) yet, b.) IRS _does_ have unquestioned authority to _modify_ any sworn return that is filed.  So, in **Step 2**, IRS is circumventing the IMF software restrictions to provide itself power to take later actions, by making the official IMF record reflect that a return WAS filed (which "0.00" amount shown they later "change" in **Steps 4** and **5**).

Restated: without injecting the phrases "**RET RCVD DT**" and "**SFR 150**" into the targeted annual module of a nontaxpayer, with corresponding claimed but false dates, and showing a "0.00" amount due, (which is just a placeholder), the software restrictions written into the IMF apparently will not allow IRS to later enter claimed deficiency amounts, computed on "Income Tax Examination **_CHANGES_**" forms, into the targeted annual module, as explained below.

Importantly, IRS' Processing Codes and Information Manual, a.k.a., "**Document 6209**", defines the initial **Step 2** "TC 424" transaction [See **Document 6209**, pg. 8-18] made by the Collections Division as a "return that has been referred to examinations or appeals division". But, it is OBVIOUS that, by definition, "non-filers" file NO returns.

---

[22] The associated DLN, when decoded, also provides explicit confirmation that IRS is misusing procedures designed to process 1040A requests.  See 6209 Manual, Pg. 4-1, "Document Locator Numbers" and Pg. 2-5, defining that a number "10" reflects that a 1040A is the subject of the transaction.  See also **Footnote 22.**

And we know, by multiple proofs, that no return, whatsoever, had been prepared at the time the "424" appears in the IMF.  For example, see IRS FOIA response to Mr. Robert McNeil [**Doc. K**], attached to this summary, wherein he sought from IRS all documentation associated with the Document Locator Number (DLN) 29210-888-00000-0 printed beside the phrases "RET RCVD DT" and "SFR 150".  IRS responded by disclosing to Mr. McNeil that "this DLN is computer generated and there is no paper document associated with it.  Therefore, there are no documents responsive to your request." [See **Footnotes 22 and 23** describing "DLNs".]

**Step 3:  IRS Conceals the TC 424 by "Reversing" it with a "425"**

Referring again to documentation concerning Ellis and 2007, in **Doc. H**, there was, literally, no return to be "referred" by anyone in IRS to any division on the RET RCVD DT, return received date, shown of "01132010", as claimed in the IMF Transcript [**Doc. H**].  Those phrases, and related dates, were injected into the module upon the initial 424/036 transaction.

So, to conceal the fact that no return existed to refer to Examinations when the phrase "Return Received Date" was entered by fraud into a "non-filer's" IMF via AIMS, IRS Collections Division initiates, on the same day as the 424/036 transaction, a follow-on transaction in AIMS, numbered "425", which simply removes the "424" transaction from view in the "IMF Complete" and "IMF Specific" screen prints.

Thankfully, it is not removed from other screen prints/versions of IRS records, such as AMDISA and TXMODA, and still exists to prove IRS mendacity.  [See **Doc. G**, TXMODA concerning Ellis and 2007 which shows the 424 transaction.  Thus, we also see that IRS uses multiple variant versions of its records, so that no single screen print shows all actions of IRS simultaneously.  Hence, requests must be made specifically for the full set of documentation to get a complete picture of how the program works.  And, IRS is fighting such requested disclosures.]

IRS defines a 425 transaction as "A TC 424 that was reversed." [See **Document 6209**, Pg. 8-18.]  But, certain evidence gets left behind in the IMF after a TC 425, which IRS cannot erase, (a telltale "document locator number" for one example[23]), due to the audit trail required by the IMF software.  Such pieces of evidence remaining after a 425 transaction is made to conceal a previous 424 transaction, proves that IRS improperly used, in **Step 2**, the software procedure

---

[23] 14-digit Document Locator Numbers (DLN) are assigned to every single IMF transaction, pointing researchers to the physical location of the paper documents to which the numbered transaction refers.  Each digit in the DLN has a specific purpose.  For example, the fourth and fifth digits of a DLN indicate the subject of the transaction.  The numbers "09" or "10" in the fourth and fifth places of the DLN regarding the "SFR 150 entry" indicate a "1040A, either unpaid or fully paid", was supposedly the subject of the "424" transaction, even when no 1040A was requested by a victim to be computed by IRS.  [See **Doc. B**, AMDISA screen print, which literally states the document IRS claims to be processing concerning Ellis and 2007 was a "1040A".  That document never existed.]

appropriate only for requests made by someone in the IRS to calculate a 1040**A** return.  [See **Doc. H**, for the DLN associated with the phrase SFR 150, even though no actual document exists associated with that entry.  DLNs are discussed carefully below.]

Although the 424 transaction is removed from sight in the IMF module/record after the 425 transaction, the accompanying data that IRS desired to enter in the affected module is not 'reversed' out, but still remains in the module, i.e., the critical term "Return Received Date", ("RET RCVD DT"), with an associated claimed date.[24]

[Since few people know of the existence of IRS' "Document 6209", (or the "AIMS Reference Guide" and the "Internal Revenue Manual"), and even fewer have time to study such things, it is statistically impossible that a person under IRS attack can discover the scheme and determine the identity of the IRS Collections employees who falsified the IMF record via a TC 424/036, then concealed it the same day via a TC 425.  According to the Fifth Amendment, "procedural due process" contemplates the right to know opposing evidence and the right to cross-examine adverse witnesses.  Yet, the Commissioner surreptitiously falsifies his records concerning targeted "non-filers" to conceal the identity of IRS employees engaged in acts they have no authority to perform.]

**Step 4: IRS "Assigns" the Phantom Return to Examinations via a TC 420**

The 424/036 and 425 transactions begun in the AIMS database, prepares the targeted module for the entry of a "420" transaction, which is input at the time a module is assigned to an Examinations Division auditor.  [See for example **Doc. G**, TXMODA re Ellis and 2007.  When looking at **Doc. G**, please incidentally notice that the 424 transaction is still visible in that version of the record concerning Ellis for 2007, but, not visible in the IMF Complete version of the record for 2007.]

IRS defines a TC 420 variously, as: "indicat[ing] that a return has been referred to the Examinations or Appeals Division", and "the return has been assigned in the Examinations or Appeals Division." [6209 Manual, Pg. 8-18.]  But, no return existed to have been referred to, or to have been assigned to, any IRS employee.

---

[24]  As noted, the 6209 Manual defines a "42**5**" as "a TC 424 that was reversed", which is just one more deception.  In truth, the 424 was not "reversed" in any way, it was simply removed from view in the IMF transcript.  The ***effects*** desired by IRS remain behind in the IMF, so, nothing was "reversed"; the number "424" was just hidden under the 425.  That is, the only thing the 425 transaction did was to conceal the 424 from view in the IMF screen print, making it, thus, more difficult to find out exactly how the phrase "SFR 150", the "0.00", the "Return Received Date", etc., came to be entered into the module of an IMF.  Deliberate acts to conceal previous crimes are themselves criminalized in 18 U.S.C. §4 as "misprision".  There is no legitimate reason to remove the 424 from view in the IMF.

In contradiction, elsewhere in the IRM we read that a 420 transaction code appearing in an IMF is simply the automatic response of the AIMS software telling the IMF software that a full record has been "established" in AIMS, after the 424/036 requisition for full matching data was made.[25]

Whichever definition of a "420" transaction is applicable in this situation, (whether that transaction is supposed to occur at the assignment by a human to an IRS auditor, or is the automatic response of AIMS to IMF reflecting establishment of a fully operational AIMS record), precisely 11 days after the 420 transaction shows up in an IMF, the phrase "SFR 150" automatically appears in the IMF record, accompanied by yet another specifically claimed date, and an amount claimed due of 0.00, (memorializing the "zero" return presumption of 301.6211). But, no "SFR" (substitute for return) occurred on any date shown.

**Step 5:  IRS Creates Documents to Later Justify "Changing" the "0.00" Amount Due**

After IRS falsifies an annual module as discussed in **Steps 2-4**, it is ready for the assigned "Examinations Division" auditor to build out a fully falsified record.  Examinations looks at the Form 1099s or W-2s sent to the Government concerning a "non-filer", (against which IRS records show no match of either a filed return, or an election under §6014 for IRS to perform an SFR), then does an initial computation of an amount supposedly owed to IRS.  That computation is typically done on an "Income Tax Examination **_Changes_**" Form 4549 [See **Doc. I**, where "Maureen Green" prepared one concerning Ellis on April 12, 2010.]

Forms 4549 are supposed to be used by auditors to track "changes" they make to deficiency amounts when an original return was already filed.  However, since no initial actual return exists in the case of a "non-filer", the employee filling out the Form 4549 will only be instigating the eventual "Change" of the "0.00" placeholding amount due, injected into the module via **Steps 2-4**.

That is, in **Step 5**, IRS is preparing paper documents to justify changing the zeros entered in an IMF earlier, via the 424/036 and 420 transactions.  Although IRS employees have unarguable authority to "change" any sworn return filed (if they can find evidence the sworn return was incorrect in any respect), what they are changing in the case of "non-filers" turns out to be only zeros.  [After the auditor's "deficiency" amounts claimed due are memorialized by entry into the

---

[25]  From "AIMS Reference Guide", Sec.4.4.1-1, (scroll to **Skeletal Accounts**) – "AIMS creates a skeletal record when IDRS CC AM424 is input, showing the requisition and limited taxpayer information. Once the request goes to Master File and is matched, Master File sends an opening record to AIMS and the account becomes fully established. Once fully established, AIMS sends a TC 420 back to Master File."
Also, in AIMS Ref. Guide, Sec. 4.4.1-1, (scroll to **Fully Established Aims Account**): "Once a TC 424 posts to Master File and is matched, Master File sends an opening record back to AIMS which is when the account becomes fully established. AIMS then sends a TC 420 back to Master File."

IMF module, IRS will, as we shall see in **Step 6**, fraudulently claim the amounts entered on the "Change" Form comprise part of a purported "substitute for return package", or "SFR package." The claimed deficiency amount will be later entered via either a TC 290 or TC 300 transaction.]

### Step 6:  Exams Creates an "SFR Package", Claiming 6020(b) as Authority

The Examinations Division auditor who filled out the paper 4549 "Change" Form (in Ellis' case for 2007, a "Maureen Green"), is not done.  She then attaches that Form to a so-called "6020(b) Certification", [See **Doc. A**, attached], to an "Explanation of Tax" Form 886, and to other docs, bundling them together in a so-called "substitute for return package", ("SFR Package"), which is then shipped to IRS data entry clerks, so that the claimed dollar amounts "due", as generated by the "package" creator, (Green), can be entered in **Step 7** into the IMF.  A copy of the "package" is also shipped to the victim.

Although the package-creator ("Green" in Ellis' 2007 case) never claims she performed a "substitute *income* tax return," she infers that she did because she states on the 6020(b) Certification in her "package" that Treasury Delegation Order 182 (now 5-2) supposedly authorizes her to perform substitutes for return.  For reasons unknown, but suspected, IRS has never published the text of TDO 182, now TDO 5-2.  But, all three IRS publications discussing the authority to perform substitute returns pursuant to TDO 182 uniformly agree it is strictly limited to 1.) employment, 2.) excise and 3.) partnership taxes, or when a taxpayer elects IRS to prepare one for him/her.  [See Background Matter B. above.]

So, the "Package Lady" (Maureen Green in Ellis' case for 2007) avoids calling her work a substitute **income** tax return.  Everyone else involved will assume her work to be a substitute **income** tax return anyway and all government lawyers will claim it to be an "SFR" which the unlearned 'outsiders' (tax court judges, defense counsel, victims) assume is a substitute INCOME TAX return.

Note the difference between a "substitute for return", which she HAS authority to prepare but only in regard to three (3) types of matters, and a "substitute *income tax* return", which she has no authority to prepare unless a taxpayer elects it.  She just writes that she has authority, pursuant to 6020(b), to perform "substitutes for return" pursuant to TD 182, which *is* technically true, but, only in three limited instances, which do not include ***income*** tax matters related to "non-filers."

### Step 7A:  Package Numbers Entered into IMF as a TC 300 or 290

In this Step, if IRS is using its AIMS software (rather than the SMSP) to falsify the IMF, the "Package Lady's" "Income Tax Examination Changes" computations on the Form 4549 then get memorialized in the IMF module/record by entrance therein of transaction codes, which might be either a Transaction Code numbered "300" or "290."  [See for example **Doc. F** 2007 IMF Transcript Complete concerning Ellis and 2007.]  Both a TC **300** and **290** are defined similarly by IRS' 6209 Manual as "Additions to Tax" transactions, and further defined as" "Assesses

additions to tax as a result of an examination or collection adjustment to a tax module *that contains a TC 150 transaction*" already. [See **Document 6209**, pg. 8-15, Emphasis added]

From that descriptor, we know that the "SFR package" which the Examinations Division created in **Step 6**, is not, <u>itself</u>, treated by IRS internally as a substitute income tax return.  It is not an "SFR 150" transaction which occurred on the claimed "Return Received Date", since a "150" transaction refers to a return, and some sort of 150 transaction MUST be in place in an IMF module **BEFORE** the TC 300 or TC 290 "Additions to Tax" deficiency amounts claimed due can be entered.   [Does that make sense to the Reader?  Please reread the previous two paragraphs.]

In other words, IRS' encoded internal records prove that the IRS treats "SFR packages" as "additions to tax" in modules which previously were made to reflect IRS' pretended preparation of a return.  SFR packages are not treated internally by IRS as substitute income tax returns, since IRS uses either a 290 or 200 transaction to memorialize the data computed in such "packages".

No computed deficiency/penalty/interest data existed at the time the initial **Step 2** AIMS "424"/"036" transaction occurred, by which IRS caused the phrase "return received date" to be inserted into the affected IMF module.  An "Additions to Tax" assessment resulting from an "audit" is, hence, not an "SFR 150", despite the fact that the phrase SFR 150 was entered into the targeted module in **Step 4,** 11 days after the TC420.

Without the phrase "SFR 150" having been fraudulently entered in **Step 4,** the IMF software apparently would prevent IRS from entering, into the targeted tax module, claimed "deficiency" amounts calculated on 'Income Tax Examination CHANGES Forms 4549', since the IMF software (predictably) requires a return to have been memorialized in an annual module by either a 150 transaction or SFR 150 transaction **before** any so-called "**additions** to tax" numbers can be entered via a TC 300 or 290 transaction.

### Step 7B. VARIATION on a THEME: the ASFR / Sun MicroSystems Platform

In September 2017, IRS suspended operation of the "Automated Substitute For Return" program, (ASFR), which used the free-standing Sun MicroSystems Platform (SMSP) located in Martinsburg, West Virginia. (It may have since been restarted.)

The ASFR/SMSP sequence was fully automated, from production of unsigned assessments, wrongly dated, unsigned "proposed assessments", "30 day letters", "90 day letters", and entries in the IMF of various dates.[26]  It provides a useful comparison to the more labor intense use by

---

[26]  We only recently discovered the SMS Platform during the ongoing forfeiture case of *United States v. Ford*, in the Eastern District of California.  That is, in discovery, the DoJ produced evidence from the IRS revealing the sequence of computer fraud used by the

Examinations of the AIMS software, although both producing the same ultimate results: falsified IMF digital records.

The ASFR/SMSP program is fully discussed in the Internal Revenue Manual, beginning with IRM Section 5.18.1.1. Four sections are extremely helpful in this analysis.

**IRM Section 5.18.1.6** states:
> "When ASFR processing is initiated on a module, the ASFR system will calculate the proposed tax assessment, and generate both the 30-day and 90-day letters."

In other words, once the SMSP is engaged by IRS' "Taxpayer Delinquency Investigation" function,[27] no human being is involved until a data entry clerk inputs a claimed deficiency amount into the targeted IMF, usually many months after it is automatically calculated by the SMSP.

In the IRM, IRS further helpfully explains the interaction of the SMSP with the IMF database:

**IRM Section 5.18.1.6.1. "ASFR Dummy TC 150",** states:
> "When an ASFR 30-Day Letter ('2566') is generated, ASFR requests a TC 971 with Action Code 141 be posted to the Individual Master File (IMF) module under consideration. The TC 971 triggers a dummy return to then post. The dummy return posts as a TC 150 for '$0.00' to the module. An ASFR dummy return can be identified by the literal 'SFR' to the right of the TC 150 on TXMODA. Additionally, the Document Locator Number (DLN) will (contain) a Julian date of 887. The Julian date for an SFR computed by the IRS Examinations Division is '888'."

We thus learn that the information provided by the Document Locator Number, when decoded, clarifies whether IRS used the AIMS or the SMSP software to falsify the IMF module. Far more importantly, however, the IRM section cited means that the SMSP automatically creates the appearance in the IMF record that a so-called "dummy" return was created by IRS, on a claimed date, when in fact no such thing exists.

The IRM blatantly confirms the fraud:

**"IRM 5.18.1.6.4 (04-06-2016) Preparing and Processing ASFR Dummy Return**

---

Collections Division against Ms. Ford. On March 27th, 2018, we presented that evidence in support of Ms. Ford's Opposition to Summary Judgment. That evidence is available on request. The Court wholly ignored the evidence, as did the Ninth Circuit on appeal.

[27] See, for details of the "TDI" system, IRM 5.18.1.2 (04-06-2016) Automated Substitute for Return (ASFR) Program Overview.

1. ASFR generates a TC 971 AC 141 which triggers a dummy return to post to the module. **No paper return exists.** Do not attempt to request the DLN from files or try to associate anything with it." [Emph. added]

IRS thus concedes, in print, that no dummy return even exists, when the ASFR/SMSP program is used to prosecute "non-filers".

If no response is made by the targeted "non-filer" to either the automated "proposed assessment", the "30 Day Letter" or the "90 day letter", here's what happens:

**5.18.1.6.11.53 (04-06-2016)  CLOSED, No Taxpayer Response (Default)**

"Status 104 indicates that a default assessment was requested.  ASFR systemically (automatically) places modules in Status 104 when the Status 090 follow-up date expires, and the module passed TIF check 4. See IRM 5.18.1.6.15, ASFR Follow-up or Action Dates.  ASFR systemically requests a **TC 290** tax assessment, TC 495, and TC 599 CC 088."

That is, the SMS Platform notices the IMF software of a need to prepare a tax assessment. IRS defines a "290" Transaction as indicating that an "additional tax (was) assessed".[28]  But, when the ASFR/SMSP program is used, a mere data clerk simply enters into the IMF, via a 290 transaction, the precise alleged deficiency total calculated by the SMSP at the inception of the attack.  Responses to FOIA requests by IRS prove that no original assessment, nor any "additional tax assessment" is ever made by any authorized human being, when the ASFR SMSP program is used.

But regardless of whether the IMF record is falsified via AIMS or by the ASFR/SMSP program, IRS creates paper documents to prevent discovery in litigation of IRS' falsified underlying digital records, which drives every attack on "non-filers".

**Step 8:  Creation of "Self-authenticating", False Certifications for Use by DoJ**

In this step, another IRS employee is told to look at the targeted IMF annual module/record as it was amended in **Steps 2-7**, (whether using AIMS or the SMSP), complete with its fraudulent "SFR 150" shown to have been created on a date different from the claimed Return Received Date, and, now, with the newly added amounts due, **such** as the claimed deficiency due (via **TC 300 or 290**), penalty due (**TC 160**), interest due (**TC 170**), etc.

Then, after reviewing the IMF, this employee creates a paper "Form 4340 Certificate of Assessments, Payments, and Other Specified Matters" (or similar document; there are variants) wherein she falsely infers a "Substitute for Return" was performed on any one of three different

---

[28]  See IRS "Processing and Codes Manual", a.k.a. 6209 Manual, Pg. 8-13.

conflicting dates, *none of which are true*.  [See **Doc. J**, an example of such "Certificate" concerning Mr. Ellis and 2007 created by "Denise Bradley."]

Specifically, analysis of the **Doc. J** Certification shows it is purposefully ambiguous to lead the reader to assume an SFR occurred either on 1.) "01132010", (January 13, 2010), which is the date we know that the "424/036" AIMS/IMF transactions occurred, (See **Doc. G**, Pg. 1) or maybe on 2.) "02082010", (February 8, 2010), which is the date the module was supposedly referred by Collections to Examinations via the 420, (See **Doc. F**, Pg. 1), or maybe on 3.) "11152010", (November 15, 2010) which is the date IRS data entry staff entered into the IMF via the TC 300 the deficiency amount, interest and penalties the Package Lady computed, (See **Doc. F**, Pg. 2).  **But, no substitute income tax return was prepared on any date, let alone any of those three.**

Most importantly, the fraudulent Certificate does NOT mention the "Package-Lady" (Maureen Green, in Ellis' case) who created the deficiency data on the 4549 Changes Form, nor the date of her work.  [Please review **Docs. A and I**, both of which were supposedly created on April 12, 2010 as part of an "SFR Package".  Please NOTE that the date April 12, 2010, never shows up in the IMF for Ellis and 2007, or in the 4340 Certificate.]

[If the SMS Platform is/was used to falsify the IMF, the related Certificate will reflect that the date of the pretended, non-existent "dummy return" is when a summary record of assessment supposedly occurred!  Evidence from discovery in *Ford* is available on request.]

So, the IRS Examinations Division employee computing data that attorneys will later infer to be part of a substitute income tax return can never be identified or cross-examined in court as to her authority to create such document.  Ms. Green disappears from the picture.

Critically, the "Certifier" (Ms. "Bradley" in Ellis' case re 2007) does not claim the information she provides is actually true, just that it accurately reflects information somewhere in the bowels of the IRS.

IRS creates the Certifications pursuant to evidentiary rules, which allow for "self-authenticating" documentation in certain instances involving complicated records.  For non-lawyers' information, the Certification part of the scheme provides the DoJ the ability to provide a Court just enough information to secure the IRS/DoJ goal (seizures, tax court judgments, etc.) while preventing cross examination of IRS expert witnesses about the identity of the Package-Lady, or about her lack of authority to perform substitute **income** tax returns for "non-filers," or about the identity of those who falsified the IMF to make it appear a substitute **income** tax return ("SFR 150") supposedly occurred on a certain date, etc.

Any fact-finder will look at the Certification provided by DoJ, shrug and say: "The Affiant swore she saw information actually on file somewhere in IRS, and nothing in the certificate gives

defense counsel cause to question the expert witness about the underlying data.  The presumption of regularity controls, and we will assume in the absence of contrary proof, that a substitute for return was performed by the Government, showing a deficiency amount owed."  [See Footnote 12, for clarity.]

The entire sordid underlying scheme, including the Package-Lady, (Ms. Green, for example), the unknown-named employee who initially inserted the phrases "Return Received Date" and "SFR 150" into the IMF, etc. is rendered invisible by the falsified paper Certificates.

**Step 9:  High Level IRS Attorneys Knowingly Approve Use of Falsified Documents**

The act of falsifying government records, as well as the act of deliberately using falsified documents, are separate violations of the criminal law proscribed at 18 U.S.C. §1001.  Since the program **invariably** occurs, as described herein, in cases involving "non-filers", and thus is not *ad hoc*, high-level IRS attorneys authorized the creation and use of the falsified IMF and certifications, which Collections personnel "use" to justify levies, liens, etc.  But, the scheme unfolds so that each participant in the sprawling enterprise has no idea of the unlawful nature of the acts which precede or follow theirs, thus providing "plausible deniability" for IRS staff.

**Step 10:  DoJ Conceals the Scheme, Uses Its Fruit, and Profits from It**

IRS prepares the misleading Certifications not only to be used by their Collections staff, but also to provide DoJ colorable documentation justifying the Government's position, since DoJ represents the Service in all court cases.  However, in every criminal case, DoJ attorneys are imputed by law to know that "exculpatory information" exists in the records of the Agency prosecuting the case. [29]  That means the DoJ attorney, in "willful failure-to-file" cases, is imputed to know that IRS falsifies its records in the manner shown in **Steps 1-8** above, even if the attorney has no personal knowledge of the scheme.  But, there's more.

Incredibly, in the DoJ's 2001 Criminal Tax Manual, **Section 40.03[9][c]**, the DoJ directly instructs United States Attorneys to avoid entering the (falsified) IMF records into evidence in court hearings.  Instead, the DoJ instructor/author advises substituting IRS' "self-authenticating" falsified certificates for IMF records:

---

[29] See *United States v. Beers*, 189 F.3d 1297, 1304 (10th Cir.1999) "[i]nformation possessed by other branches of the government, including investigating officers (of investigative agencies), is typically imputed to the prosecutors of the case' for *Brady* purposes; *United States v. Jennings*, 960 F.2d 1488, 1490 (9th Cir. 1992) '[t]his personal responsibility cannot be evaded by claiming lack of control over the files … of other executive branch agencies'.  Thus, a defendant's due process right to a fair trial is violated when any Government actor, agent or agency withholds material evidence favorable to the defendant, irrespective of any personal knowledge of the prosecuting attorney."

"Admissibility of IRS Computer Records.  The introduction of the actual Individual Master File (IMF) transcript of account through a witness can open the witness to cross-examination by the defense about every code and piece of information contained in the transcript.  **In order to avoid this problem**, **it may be wiser to simply offer IRS computer records at trial in the form of (paper) Certificates of Assessments and Payments, certified documents reflecting tax information kept on file at the IRS."** [Emphasis added.]
https://www.justice.gov/sites/default/files/tax/legacy/2006/02/28/40ctax.pdf

Why is it "wiser", and what intelligent U.S. Attorney could not understand the veiled advice/inference, that introduction of IMF digital records into a criminal prosecution might hinder a conviction?  [As an aside, the cryptic phrase "may be wiser" is never used anywhere else in the Criminal Tax Manual.]

The attorney, or attorneys, who provided that instruction to U.S. Attorneys were aware that, by placing into evidence IRS' falsified IMF records concerning a "non-filer", with its telltale document locator evidence, with its mismatched dates contradicting the Certifications, with its concealed transactions, etc., IRS experts could be compelled under cross-examination to reveal the entire underlying IMF record falsification program, (whether initiated by Collections or Examinations) the lack of authority to perform substitute **income** tax returns for "non-filers," the imaginary zero returns, the improper use of procedures (AIMS to modify IMF records when no election is made for IRS to perform a 1040A return), etc.  All of which would prove to a jury that Congress never imposed the income tax on "non-filers", since Congress can't authorize the wholesale systematic falsification of government records.

Thus, although DoJ attorneys are imputed by law to know the existence of the exculpatory information concealed in the falsified IMF records of IRS concerning any person prosecuted in Court, the DoJ instructs their attorneys to avoid presenting that evidence to victims or fact finders, which results in a 97% conviction rate in "willful failure to file" cases (inevitably based on falsified underlying IMF records).

Falsifying government records is proscribed at 18 U.S.C. §1001, as is knowing "use" of falsified records.  Concealing the commission of a felony ("misprision of felony") is a violation of 18 U.S.C. §4.  IRS and DoJ attorneys are participating in a "conspiracy against rights" to surreptitiously circumvent and rape the due process rights of "non-filers", protected by the Fifth Amendment.  Conspiracies to violate constitutional rights of others is violative of 18 U.S.C. §241.  Obstruction of justice is criminalized at 18 U.S.C. §1503.

**Afterward – Speculations/Inferences**

Since the Commissioner has had over 100 years of practice enforcing the income tax on "non-filers", exactly why **_does_** the Commissioner commit and conceal crimes to justify seizing the property of "non-filers"?  Obvious answer: He has no lawful power to determine deficiency

amounts absent a justiciable controversy raised voluntarily by an American.  Said differently, the Commissioner has not been given, by Congress, LAWFUL power to compel "non-filers", as conceded by the IRS Assistant Chief Counsel:

> "Accordingly, the penalties of perjury statement has important significance in our tax system. The statement connects the taxpayer's *attestation of tax liability* (by the signing of the statement) with the Service's statutory ability to *summarily assess* the tax. (Emphasis added) Assistant Chief Counsel, *Memorandum* 3 (July 29, 1998) http://www.irs.gov/pub/irs-wd/1998-053.pdf.  [See **Doc. L**, Pg.3, 2nd Full ¶, attached hereto, as a courtesy copy.]

That is a GIGANTIC concession.  Unless a person attests under oath as to a duty to file, whether the amount claimed is zero or larger, the Service's authority to summarily assess the income tax cannot be activated.  It lies inert, paralyzed.  But, when a person provides the Government sworn 1040 evidence, IRS is fully authorized to act on it, to dispute any amount claimed, to summarily assess, to seize and/or to prosecute.

The Commissioner can't seize property without a "deficiency", and publicly admits he has no delegated power to execute substitute income tax returns under 26 U.S.C. §6020(b).  That means, even if he supposes a tax liability/deficiency exists, he has no unilateral power to create a controversy he can use to compel collection.

IRS software is stringently written to follow the law.  So, IRS manipulates adjunct computers (AIMS or SMSP) to falsify IMF records reflecting that a taxpayer has attested to his liability, (that a 1040A return supposedly exists), absent which IRS cannot LAWFULLY create the appearance of actionable deficiencies, and commence collection.

The restrictions built into his IMF software perfectly reflect the voluntary nature of the return; so does the Commissioner's "work-around".  He "games" his IMF software to make his almost indecipherable, encoded IMF records falsely reflect that a return was received on a claimed date, when no return exists at all, which then allows him to enter into an IMF a determination of a collectable deficiency.

As noted above, the complex, layered scheme's existence infers Congress ACTUALLY imposed no duty on "non-filers" to file returns , that the income tax system is truly based on the "gem of **voluntary** compliance",[30] that, to seize the property of those who don't volunteer,

---

[30]  "We don't want to lose voluntary compliance... We don't want to lose this gem of voluntary compliance." Fred Goldberg, IRS Commissioner, *Money* magazine, April, 1990. Goldberg confirmed the 1953 testimony of Dwight E. Avis, head of the Alcohol and Tobacco Tax Division of the Bureau of the Internal Revenue before the House Ways and Means Committee of the Eighty-Third Congress: "Let me point this out now: Your income tax is 100 percent voluntary tax, and your liquor tax is 100 percent enforced tax.  Now, the situation is as different as night and day."

requires commission of concealed crimes to conjure the appearance of "substitute income tax returns" after which IRS fabricates pretended "deficiency amounts" justifying seizures, that without such falsified records no seizure or criminal prosecution could be justified, and that Government attorneys and software engineers have been fabricating for decades the appearance of pretended duties and viciously enforcing the "income tax", while raping/destroying helpless fellow Americans.

The guts of the American income tax is a white-collar criminal enterprise, the largest record falsification program/entrapment scheme the world has ever seen.  And it's now being operated "in the clear", with full knowledge of every attorney involved.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## LET OUR PEOPLE GO.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~


## Documents Provided

Doc. A - Section 6020(b) Certification re Mr. Ellis and 2007

Doc. B - AMDISA print re: Ellis and 2007

Doc. D - Revenue Officers' Handbook, Lesson 23

Doc. F - IMF MCC TRANSCRIPT COMPLETE, dated 06-22-2011, Re: Ellis, 2007

Doc. G - TXMOD A Re: Ellis and 2007

Doc. H - IMF MCC TRANSCRIPT SPECIFIC re Ellis and 2007,
            dated 05-28-2010

Doc. I - Form 4549 Income Tax Examination Changes, re Ellis and 2007

Doc. J - Certificate of Assessments, re Ellis and 2007

Doc. K - FOIA Disclosure by IRS, re Robert McNeil

Doc. L - IRS "memorandum" dated 29 July 1998

Other documentation available upon request

**Verification/Declaration**

Comes now Michael B. Ellis and Robert A. McNeil, declaring under penalty of perjury, pursuant to 28 USC §1746, that: "The facts stated in the foregoing '**The Ten Step Program Used by IRS/DoJ to Enforce the Income Tax on 'Non-Filers'**" are absolutely true and correct to the very best of my knowledge and belief, So HELP ME GOD."


_____                    _____
Michael B. Ellis                                              Robert A. McNeil

# Doc. A

**Form 13496**

**IRC Section 6020(b) Certification**

**Ellis**

**2007**

| # **IRC Section 6020(b) Certification** | Total pages certified as valid section 6020(b) return | Tax year |
|---|---|---|
| | | 200712 |

| Name of taxpayer | | SSN / EIN |
|---|---|---|
| MICHAEL ELLIS | *Note: "Total pages certified as valid section 6020(b) return" is blank.* | -8039 |

Address of taxpayer *(Number, Street, City or Town, State, ZIP code)*

1116 W 7TH ST # 64
COLUMBIA  TN  38401-1811

---

### Certification

The officer of the IRS identified below, authorized by Delegation Order 182, certifies the attached pages constitute a valid return under section 6020(b). This return consists of the following items:

1. Report summarizing Examination changes or equivalent report of adjustments *(including, but not limited to: Form 4549, Income Tax Examination Changes; Form 4549-A; Income Tax Discrepancy Adjustments; Form 5278, Statement -- Income Tax Changes; Form 4667, Examination Changes -- Federal Unemployment Tax, Form 4668, Employment Tax Examination Changes Report, Form 2504, Agreement to Assessment and Collection of Additional Tax and Acceptance of Overassessment, or Form 2504-WC, Agreement to Assessment and Collection of Additional Employment Tax and Acceptance of Overassessment in Worker Classification Cases );*

2. Form 886-A, Explanation of Items, appropriate issue lead sheet or similar form;

3. This certification *(Form 13496).*

Pursuant to section 6651(g)(2), this certification, with attachments, shall be treated as the return filed by the taxpayer for purposes of determining the amount of the additions to tax under paragraphs (2) and (3) of section 6651(a).

---

### IRS Authorization Data

| Employee name | Title | Office | ID number |
|---|---|---|---|
| Maureen Green | Operations Manager, Examination | Ogden Service Center | 29-12033 |

| Signature | | Date *(mmddyyyy)* |
|---|---|---|
| *Maureen Green* | | 04/12/2010 |

Form **13496** (Rev. 02-2009)   Catalog Number 37538J   publish.no.irs.gov   Department of the Treasury-**Internal Revenue Service**

# Doc. B

## AMDISA

## Ellis

## 2007

4/28/2011

```
AMDISA      -8039   MFT>30   TX-PRD>200712              NM-CTRL>ELLI
PRIMARY-NAME>ELLIS,MICHAEL                        JULIAN-DT>2011118
ASED>10/18/2013X                              OPNG-CRTN-DT>01/28/2010
SOURCE-CD>24  NON-FILER                   EXAM-START-CD/DT>310  04/12/2010

                        DIF/DAS-RSN-CD>R
ACTY-CD>275                                            DIS-IND>4

STATUTE-XTRCTN-IND>0   PARTIAL-AGRMT-IND>0   TC-300-IND>1
PBC>298  SBC>00000   POD>369
EGC/DT>5291  03/17/2010            PRIOR-EGC/DT>5065  01/13/2010
 CURRENT-STATUS-CD/DATE              PRIOR-STATUS-CD/DATE
 90 CLOSED            10/25/2010  24 90-DAY STATUTORY NOTICE   06/14/2010
PROJ-CD>0313  TRACK-CD>0055            PUSH-CD>036  PICF-CD>0
DISP-CD/DT>10 10/25/2010 CLS-PBC>298  XREF-DLN>29247298000000
RET-RECVD-DT>01/13/2010   DELQ-RET-IND>1  RET-PSTNG-YR>2010  UPDT-CD>Q  PR-UPDT-CD>S
                                                            TC-424-CD>2

NM-LN-YR>2003          MASTER-FILE-NAME-LINE>MICHAEL   ELLIS
ADD-CHG-CYC>201116     CONT-OF-PRIMARY-NAME>
                          STREET>2120  MONTCLAIR  DR
                       CITY>FORT  WORTH          STATE>TX  ZIP>761032038
                                                      SC>29  OSC
Employee #7927250110  Page 001 of 004   PAGE   002

------------------------------- -------------------------------- ----------------

AMDISA      -8039   MFT>30   TX-PRD>200712              NM-CTRL>ELLI
PRIMARY-NAME>ELLIS,MICHAEL                        JULIAN-DT>2011118
AIMS-OPENING-SOURCE-CD>24      RETURN-FORM-NUMBER>1040A
TECH-SERVICES-CD>000



              EXAM-NAICS-CD>000000    RET/5546/LABELS  NOT REQ


ARDI-CD>0
ESTIMATED-TAX-IND
BOD-CD>SB   CLIENT-CD>V




                                                      SC>29  OSC
Employee #7927250110  Page 002 of 004   PAGE   003
```

# Doc. D

## Revenue Officers' Handbook

## Lesson 23

Revenue Officer
Unit I

Lesson 23

IRC SECTION 6020(B)

Figure 23-2

Order No. 182 (Rev. 3)

Effective date:  12-14-83 Authority to Execute Returns

The authority granted to the Commissioner of Internal
Revenue by 26 CFR 301.6020-1(b) and 26 CFR 301.7701-9 to
execute returns required by any internal revenue law or
regulation made thereunder when the person required to file
such return fails to do so, is delegated to:

1.   Revenue agents;

2.   Tax auditors;

3.   Revenue officers, GS-9 and above;

4.   Collection Office function managers, GS-9 and above;

5.   Automated Collection Branch Managers, GS-9 and above;
     and

6.   Service Center Collection Branch managers, GS-9 and
     above.

The authority delegated herein may not be redelegated.
Delegation Order No. 182 (Rev. 2), effective March 7, 1983,
is superseded.

/s/  James I. Owens
Deputy Commissioner


The IRM restricts the broad delegation shown in figure 23-2,
for revenue officers, to employment, excise, and partnership
tax returns because of constitutional issues.  (You have
already studied audit referrals as a means to enforce
compliance on income tax returns).

Generally you can file the following returns, using the
authority granted by IRC section 6020(b):

1.   Form 940, Employer's Annual Federal Unemployment Tax
     Return

2.   Form 941, Employer's Quarterly Federal Tax Return

# Doc. F

## IMF MCC TRANSCRIPT COMPLETE

## Ellis

## 2007

```
        000285

     PAGE NO-0019  TAX PERIOD 30 200312*CONTINUED

              *IMF MCC TRANSCRIPT-COMPLETE*        EMP NO 79-293-03743

     ACCOUNT NO    -8039        06-22-2011
     NAME CONT- ELLI            CYCLE-201125
     ************************************** ****************
                          XREF-                971 CD-252
                          X-MFT-00 MEMO-              FTD ALRT-0
                          ID THEFT 50X CD-00  ID THEFT 52X CD-00
                          MISC-  1,014,550.00  2009I

         971 02142011---------------  20110508 49277-999-99999-1
                          XREF-                971 CD-262
                          X-MFT-00 MEMO-              FTD ALRT-0
                          ID THEFT 50X CD-00  ID THEFT 52X CD-00
                          MISC-  1,014,550.00  2009I

     MF STAT-21 02272006    168,157.63    200607
     MF STAT-58 04032006    168,157.63    200612
     MF STAT-21 12032007    168,157.63    200747
     MF STAT-26 06122006    168,157.63    200622
     MF STAT-26 10132008    183,010.47    200840
     MF STAT-24 11242008    183,010.47    200846
     MF STAT-26 01102011    183,010.47    201052
     *****************************
     * TAX PERIOD 30  200712 *        REASON CD-       MOD EXT CYC-201125
     *****************************
     FS-1 TFRP- CRINV- LIEN-4       29247-700-00193-0   CAF-  FZ>T  -
     TDA COPYS-7262                 TDI COPYS-
             INT TOLERANCE- MATH INCREASE-  HISTORICAL DO-62 BWNC-  BWI-
     MF MOD BAL-        16,054.29
     ACRUED INTEREST-      371.04  07042011   CSED-11152020
     ACCRUED PENALTY-      712.04  07042011   RSED-04152011
     FMS-3IA CD-0                              ARDI-0          ASED-00000000

     SFR 150 02082010          0.00  05  201004
                               29210-888-00000-0  CD-      SRC-0
     RET RCVD DT-01132010      PREPARE IND-0  PREPARE TIN-
                               TAX PER T/P-              0.00
                                   F/C- AGI-      39,311.00
                               FOREIGN-       FARM-  MF P-
                               TYPE COOP-1 LAST YR 1120C-+
                               XRF-          AEIC-          0.00
                               NAI-    EXMPT-01 NRGY-       0.00
                               LTEX-       TAXABLE INC-  30,561.00
                               PENALTY SUPP-1000   SET-    5,977.00
                                   TOTAL WAGES-            0.00
                               MDP-     TOTAL INC TX-      0.00
                                   EST TAX BASE-          0.00
                                   PR YR BASE-            0.00
                               SHORT YR CD-    ES FORGIVENESS %-  0
                               USVI-0
```

*****************************CONTINUED ON NEXT PAGE***************************** *

```
000286

  PAGE NO-0020   TAX PERIOD 30 200712*CONTINUED

              *IMF MCC TRANSCRIPT-COMPLETE*         EMP NO 79-293-03743

  ACCOUNT NO      -8039          06-22-2011
  NAME CONT- ELLI                CYCLE-201125
**********************************  *********************************  ********************
                                    1ST SE-        39,064.00
                                    2ND SE-            0.00
                                    ACCT TYPE-
                                    EFT-0
                                    F8615-  UNAPPLD CR ELECT-
                                            ES TAX PAYMENT-              0.00
                                            DIR DEP REJ RSN CD-00
                                    PUTI-          0   SUTI-             0
                                    PMEI-     39,064   SMEI-             0
                                    PMTI-          0   SMTI-             0

    140 11172008          0.00    20084808 49249-322-00000-8
                                    PRC-

    971 12082008--------------    20084808 49277-322-00000-8
                                    XREF-                    971 CD-804
                                    X-MFT-00 MEMO-                FTD ALRT-0
                                    ID THEFT 50X CD-00  ID THEFT 52X CD-00
                                    MISC-    1,014,550.00  2009I

    971 11242009--------------    20094808 49277-729-57668-9
                                    XREF-                    971 CD-407
                                    X-MFT-00 MEMO-                FTD ALRT-0
                                    ID THEFT 50X CD-00  ID THEFT 52X CD-00
                                    MISC-    1,014,550.00  2009I

    425 01132010--------------    20100408 29277-013-20000-0
                                    SOURCE-24  ORG-5065  PROJ-277  RET REQ-
                                    PTR DO-98

    595 02082010--------------    20100408 29249-013-20000-0
                                    COLCLOS-                     XREF-

    570 02082010--------------    20100408 29210-888-00000-0
                                    COLCLOS-90      CYCLES-04

    420 01282010--------------    20100508 29277-028-00000-0
                                    AIMS SC-24 PBC-298 SBC-00000 EGC-5065

    170 11152010        462.94    20140408 29247-700-00193-0
                                    PRC-    EST PNLTY WAIVED-           0.00
                                    CSED-11152020

    160 11152010       2,288.70    20140408 29247-700-00193-0
                                    PRC-

    300 11152010      10,172.00    20140408 29247-700-00193-0


***************************CONTINUED ON NEXT PAGE*************************** *
```

SC MFTRA

000287

PAGE NO-0021  TAX PERIOD 30 200712*CONTINUED

*IMF MCC TRANSCRIPT-COMPLETE*        EMP NO 79-293-03743

ACCOUNT NO    -8039        06-22-2011
NAME CONT- ELLI            CYCLE-201125
****************************** ********************************* ****************
                              HC  DC10 870D      ASED10182013
                                                      PC9 AO
                              CLAIM REJECT DT-
                              ABSTRACT-878        ::,0<0,0<2.<:
                              ABSTRACT-895        ::,0<0,0<2.<:
                              ABSTRACT-889        90,:<0,0<2.<:
                              ABSTRACT-888        ::,0<0,0<2.<:
                              ABSTRACT-886        ::,0<0,0<2.<:
                              CSED-11152020

    421 11152010---------------   20104408 29247-700-00193-0 X
                                  DISP CD-   SOURCE-

    336 11152010      .  1,553.99  20104408 29247-700-00193-0
                                  REFERENCE AMT-

    276 11152010        1,576.66  20104408 29247-700-00193-0
                                  PRC-

    971 11152010---------------   20104408 29277-700-00193-0
                                  XREF-                971 CD-804
                                  X-MFT-00 MEMO-              FTD ALRT-0
                                  ID THEFT 50X CD-00  ID THEFT 52X CD-00
                                  MISC-    1,014,550.00  2009I

    971 12112010---------------   20105108 63277-747-04117-0
                                  XREF-                971 CD-611
                                  X-MFT-00 MEMO-              FTD ALRT-0
                                  ID THEFT 50X CD-00  ID THEFT 52X CD-00
                                  MISC-    1,014,550.00  2009I

    582 01142011---------------   20110408 49277-418-07415-1
                                  REGULAR LIEN

    971 01182011---------------   20110408 56277-419-06940-1
                                  XREF-                971 CD-252
                                  X-MFT-00 MEMO-              FTD ALRT-0
                                  ID THEFT 50X CD-00  ID THEFT 52X CD-00
                                  MISC-    1,014,550.00  2009I

    971 02072011---------------   20110508 28277-001-99999-1
                                  XREF-                971 CD-060
                                  X-MFT-00 MEMO-              FTD ALRT-0
                                  ID THEFT 50X CD-00  ID THEFT 52X CD-00
                                  MISC-  .  1,014,550.00  2009I

    971 03302011---------------   20111408 49277-490-07464-1


***************************CONTINUED ON NEXT PAGE*************************** *

# Doc. G

**TXMODA**

**Ellis**

**2007**

```
TXMODA    -8039    MFT>30  TX-PRD>200712    PLN-NUM>        NM-CTRL>ELLI
29247-700-00193-0<DLN                           BOD-CD>SB CLIENT-CD>V
                                    MF-XTRCT-CYC>201122    SC-REASON-CD>6T
SC-STS>26    MOD-BAL>          16,054.29  CYC>201101
MF-STS>26    MOD-BAL>          16,054.29  CYC>201101 TODAYS-DT>06/07/2011  ICS>1
            LAST-NOTICE>DAS                  PRIMARY-LOC>7525
-----------------------------                  CL-LOC>25              PDC-IND>00
ASED>          FRZ>T    -   |       AIMS-CD>1 CL-ASGMT>25141454
CSED>11152020  INTL>         |    FMS-CD>3         LIEN>4 MOD-YLD-SCR>0007906
RSED>04152011                |            TDI>2 TDI-CYC>201101
-----------------------------                |
CS-CTRL-INFO>NO CASE CONTROLS
-----------------------POSTE D RETURN  INFORMATION--------------------
RET-RCVD-DT>01132010    MO-DELQ>05
FS>1    NUM-EXEMPT>01
AGI>      39,311.00
TXI>      30,561.00    PRIM-SE-INCM>      39,064
SET>      5,977
PMEI>     39,064
----------------------------R ETURN TRANSACTION-----------------------
    T/C  POSTED     TRANS-AMOUNT    CYC     T      DLN
    150  02082010                 0.00   20100408      29210-888-00000-0    SFR

Employee #7937520282 Page 001 of 004  PAGE   002


-------------------------  ------------------------  -------------------
TXMODA    -8039    MFT>30  TX-PRD>200712    PLN-NUM>        NM-CTRL>ELLI
-----------------------POSTED  TRANSACTIONS  SECTION---------------------- --
    T/C  POSTED     TRANS-AMOUNT    CYC-DAY  T      DLN
    140  11172008                 0.00   20084808    49249-322-00000-8
    971  12082008                 0.00   20084808    49277-322-00000-8      971-CD>804
                     MISC>CP 0059
    971  11242009                 0.00   20094808    49277-729-57668-9      971-CD>407
    424R 01132010                 0.00   20100408    29277-013-20000-0   SOURCE-CD>24
                          SPCL-PROJ>0277
                          PBC>298    SBC>00000    EGC>5065  PUSH-CD>036
    595  02082010                 0.00   20100408    29249-013-20000-0
    570  02082010                 0.00   20100408    29210-888-00000-0
    420  01282010                 0.00   20100508    29277-028-00000-0
                          PBC>298    SBC>00000    EGC>5065
    170  11152010               462.94   20104408    29247-700-00193-0
                                                CSED>20201115
    160  11152010             2,288.70   20104408    29247-700-00193-0
                                                CSED>20201115
    300  11152010            10,172.00   20104408    29247-700-00193-0
                          CSED>20201115          PRT-CD>9
                     DISP-CD>10 ASED>        10182013
                                                TECH-CD>6
                ABST-NUM    ABST-AMT      ABST-NUM    ABST-AMT
Employee #7937520282 Page 002 of 004  PAGE   003
```

```
TXMODA      -8039    MFT>30   TX-PRD>200712    PLN-NUM>     NM-CTRL>ELLI
                               878        39,064.00        895      39,064.00
                               889         5,977.00        888      39,311.00
                               886        30,561.00
         421   11152010           0.00   20104408 X 29247-700-00193-0
         336   11152010       1,553.99   20104408   29247-700-00193-0
         276   11152010       1,576.66   20104408   29247-700-00193-0
         971   11152010           0.00   20104408   29277-700-00193-0       971-CD>804
                            MISC>CP 0022
         971   12112010           0.00   20105108   63277-747-04117-0       971-CD>611
         582   01142011           0.00   20110408   49277-418-07415-1
                               REGULAR LIEN
         971   01182011           0.00   20110408   56277-419-06940-1       971-CD>252
         971   02072011           0.00   20110508   28277-001-99999-1       971-CD>060
         971   03302011           0.00   20111408   49277-490-07464-1       971-CD>069
         971   04252011           0.00   20111808   49277-516-67243-1       971-CD>066
-------------------------NOT ICE HISTORY SECTION----------------------- ----
NOTICE          AMOUNT          CYC  S  AO
CP059             0.00       200848  M  25      SUPPRESS-CD>0
CP022         16,054.29      201044  M  25      SUPPRESS-CD>0
DAS           16,054.29      201044  M  25
CP504         16,217.69      201049  I  25      SUPPRESS-CD>0
DAS           16,361.41      201101  I  25      SCND-TDA-SEL>A
Employee #7937520282 Page 003 of 004  PAGE   004


-------------------------------- --------------------------------- -----------------

TXMODA      -8039    MFT>30   TX-PRD>200712    PLN-NUM>     NM-CTRL>ELLI
-----------------------SERVICE  CENTER HISTORY SECTION-----------------------
SC-STS    DATE       STATUS-AMOUNT      CYC
   21   11152010       16,054.29      201044
   58   12202010       16,054.29      201049
   26   01172011       16,054.29      201101
-----------------------MASTER  FILE HISTORY SECTION----------------------- --
MF-STS    DATE       STATUS-AMOUNT      CYC          CCNIP-SELECT-CD
   02   11172008  IND>   NTC-AO>25    200848              52
   02   12082008  IND>1  NTC-AO>25    200848              52
   03   01122009  IND>8  NTC-AO>25    200853              52
   06   02082010           0.00       201004
   21   11152010       16,054.29      201044
   58   12202010       16,054.29      201049
   26   01172011       16,054.29      201101




Employee #7937520282 Page 004 of 004  PAGE   001
```

# Doc. H

## IMF MCC TRANSCRIPT SPECIFIC

## Ellis

## 2007

000186

PAGE NO-0001

*IMF MCC TRANSCRIPT-SPECIFIC*                    EMP NO 79-291-1401

 ACCOUNT NO        -8039          05-28-2010
 NAME CONT- ELLI                  CYCLE-201021
**********************************************************************
FOR-7929114011 BY-7929114011 ON-05282010 TYP-S-30-200712
TIME-13:47 SRC-I                      PROCESSED ON-148
                                      REQUESTED TAX MODULE FOUND ON MF


2003 1 MICHAEL ELLIS
       1116 W 7TH ST # 64
200637 COLUMBIA                                   BODC-SB BODCLC-V
                        TN 38401-1811-166

ULC-62 AO-25 CLC-   SBAO-        PRIOR NAME CONTROL-        FZ>   -
YEAR REMOVED-       ENT EXT CYC-201021   MFR-01  VAL-1 IRA-        CAF-
                                         FYM-12 SCS-   CRINV-  130-
                                         RPTR-  PMF-   SHELT-  BNKRPT- BLLC-
                                         ACCRETION-   FMS-1  PDC-00   MIN SE-
                                         JUST-   IRS EMPL-  FED EMPL-  LII-0


1991 1 MICHAEL B ELLIS
PTNL MICHAEL ELLIS

LSTRET-1995 ME-     CND-E FLC-00 199652
********************************
* TAX PERIOD 30    200712 *         REASON CD-          MOD EXT CYC-201021
********************************
FS-1 TFRP-  CRINV-  LIEN-          29210-888-00000-0  CAF-  FZ>   -SLR
TDA COPYS-                         TDI COPYS-
        INT TOLERANCE-  MATH INCREASE-  HISTORICAL DO-62 BWNC-  BWI-
MF MOD BAL-              0.00
ACRUED INTEREST-        0.00  06072010      CSED-
ACCRUED PENALTY-        0.00  06072010      RSED-04152011
FMS- IA CD-0                                ARDI-0         ASED-00000000

 SFR  150 02082010         →    0.00      201004
                                29210-888-00000-0   CD-      SRC-0
RET RCVD DT-01132010       →    PREPARE IND-0  PREPARE TIN-
                                         TAX PER T/P-              0.00
                                              F/C-  AGI-           0.00
                                FOREIGN-       FARM-  MF P-
                                TYPE COOP-1 LAST YR 1120C-+
                                XRF-          AEIC-             0.00
                                NAI-       EXMPT-01 NRGY-
                                LTEX-        TAXABLE INC-        0.00
                                PENALTY SUPP-1000  SET-
                                          TOTAL WAGES-          0.00
                                MDP-      TOTAL INC TX-         0.00
                                     EST TAX BASE-             0.00
                                       PR YR BASE-             0.00
                                SHORT YR CD-    ES FORGIVENESS %-  0
                                USVI-0
*****************************CONTINUED ON NEXT PAGE***************************

**Doc. H**

**Pg. 2 of 2**

000187

PAGE NO-0002   TAX PERIOD 30 200712*CONTINUED

*IMF MCC TRANSCRIPT-SPECIFIC*                    EMP NO 79-291-1401

ACCOUNT NO       -8039            05-28-2010
NAME CONT- ELLI                   CYCLE-201021
**********************************************************************
                              1ST SE-              0.00
                              2ND SE-              0.00
                              ACCT TYPE-
                              EFT-0
                              F8615-   UNAPPLD CR ELECT-
                                   ES TAX PAYMENT-            0.00
                                     DIR DEP REJ RSN CD-00
                              PUTI-      0   SUTI-            0
                              PMBI-      0   SMEI-            0
                              PMTI-      0   SMTI-            0

   140 11172008            0.00   20084808 49249-322-00000-8
                                  PRC-

   971 12082008---------------   20084808 49277-322-00000-8
                                  XREF-                 971 CD-804
                                  X-MFT-00 MEMO-            FTD ALRT-(

   971 11242009---------------   20094808 49277-729-57668-9
                                  XREF-                 971 CD-407
                                  X-MFT-00 MEMO-            FTD ALRT-(

   425 01132010---------------   20100408 29277-013-20000-0
                                  SOURCE-24  ORG-5065  PROJ-277  RET REQ-
                                  PTR DO-80

   595 02082010---------------   20100408 29249-013-20000-0
                                  COLCLOS-              XREF-

   570 02082010---------------   20100408 29210-888-00000-0
                                  COLCLOS-03      CYCLES-

   420 01282010---------------   20100508 29277-028-00000-0
                                  AIMS SC-24 PBC-298 SBC-00000 EGC-5065

MF STAT-02 11172008    NOTICE AO-25    200848
MF STAT-02 12082008 1  NOTICE AO-25    200848
MF STAT-03 01122009 8  NOTICE AO-25    200853
MF STAT-06 02082010         0.00       201004

# Doc. I

## Form 4549

## Income Tax Examination Changes

## Ellis

## 2007

| Form **4549** (Rev. May 2008) | Department of the Treasury - Internal Revenue Service<br>**Income Tax Examination Changes** | | Page 1 of 2 | |
|---|---|---|---|---|
| Name and Address of Taxpayer<br><br>MICHAEL ELLIS<br>1116 W 7TH ST # 64<br>COLUMBIA  TN  38401-1811 | | Taxpayer Identification Number<br>-8039 | | Return Form No:<br>1040 |
| | | Person with whom examination changes were discussed. | Name and Title: | |

| | | Period End<br>12/31/2007 | Period End | Period End |
|---|---|---|---|---|
| **1.** | **Adjustments to Income** | | | |
| a. | Nonemployee Compensation | 42,300.00 | | |
| b. | SE AGI Adjustment | (2,989.00) | | |
| c. | Standard Deduction | (5,350.00) | | |
| d. | Exemptions | (3,400.00) | | |
| e. | | | | |
| f. | | | | |
| g. | | | | |
| h. | | | | |
| i. | | | | |
| j. | | | | |
| k. | | | | |
| l. | | | | |
| m. | | | | |
| n. | | | | |
| o. | | | | |
| p. | | | | |
| **2.** | **Total Adjustments** | 30,561.00 | | |
| **3.** | Taxable Income Per Return or as Previously Adjusted | 0.00 | | |
| **4.** | **Corrected Taxable Income** | 30,561.00 | | |
| | Tax Method | TAX TABLE | | |
| | Filing Status | Single | | |
| **5.** | **Tax** | 4,195.00 | | |
| **6.** | Additional Taxes / Alternative Minimum Tax | | | |
| **7.** | Corrected Tax Liability | 4,195.00 | | |
| **8. Less** | a. | | | |
| **Credits** | b. | | | |
| | c. | | | |
| | d. | | | |
| **9.** | **Balance**  (Line 7 less lines 8a through 8d) | 4,195.00 | | |
| **10. Plus** | a. Self Employment Tax | 5,977.00 | | |
| **Other** | b. | | | |
| **Taxes** | c. | | | |
| | d. | | | |
| **11.** | Total Corrected Tax Liability (line 9 plus line 10a through 10d) | 10,172.00 | | |
| **12.** | Total Tax Shown on Return or as Previously Adjusted | 0.00 | | |
| **13.** | Adjustments to:  a. | | | |
| | b. | | | |
| | c. | | | |
| **14.** | Deficiency-Increase in Tax or (Overassessment -Decrease in Tax)<br>(Line 11 less Line 12 adjusted by Lines 13a through 13c) | 10,172.00 | | |
| **15.** | Adjustments to Prepayment Credits - Increase (Decrease) | | | |
| **16.** | Balance Due or (Overpayment ) - (Line 14 adjusted by Line 15)<br>(Excluding interest and penalties) | 10,172.00 | | |

The Internal Revenue Service has agreements with state tax agencies under which information about federal tax, including increases or decreases, is exchanged with the states. If this change affects the amount of your state income tax, you should amend your state return by filing the necessary forms.

You may be subject to backup withholding if you underreport your interest, dividend, or patronage dividend income you earned and do not pay the required tax. The IRS may order backup withholding *(withholding of a percentage of your dividend and/or interest income)* if the tax remains unpaid after it has been assessed and four notices have been issued to you over a 120-day period.

000181

| Form **4549** (Rev. May 2008) | Department of the Treasury - Internal Revenue Service **Income Tax Examination Changes** | | | Page 2 of 2 |
|---|---|---|---|---|
| Name of Taxpayer MICHAEL ELLIS | | Taxpayer Identification Number -8039 | | Return Form No: 1040 |

| 17. **Penalties/ Code Sections** | Period End 12/31/2007 | Period End | Period End |
|---|---|---|---|
| a.  Delq-IRC 6651(a)(2) | 1,220.64 | | |
| b.  Delq-IRC 6651(a)(1) | 2,288.70 | | |
| c.  Estimated Tax-IRC 6654 | 462.94 | | |
| d. | | | |
| e. | | | |
| f. | | | |
| g. | | | |
| h. | | | |
| i. | | | |
| j. | | | |
| k. | | | |
| l. | | | |
| m. | | | |
| n. | | | |
| 18.  **Total Penalties** | 3,972.28 | | |
| Underpayment attributable to negligence: (1981-1987) A tax addition of 50 percent of the interest due on the underpayment will accrue until it is paid or assessed. | | | |
| Underpayment attributable to fraud: (1981-1987) A tax addition of 50 percent of the interest due on the underpayment will accrue until it is paid or assessed. | | | |
| Underpayment attributable to Tax Motivated Transactions (TMT). The  interest will accrue and be assessed at 120% of the under-payment rate in accordance with IRC §6621(c) | 0.00 | | |
| 19.  **Summary of Taxes, Penalties and Interest:** | | | |
| a.  Balance due or (Overpayment) Taxes - (Line 16, Page 1) | 10,172.00 | | |
| b.  Penalties (Line 18)  computed to 04/12/2010 | 3,972.28 | | |
| c.  Interest (IRC§ 6601) - computed to 05/12/2010 | 1,395.76 | | |
| d.  TMT Interest - computed to 05/12/2010 (on TMT underpayment) | 0.00 | | |
| e.  Amount due or (refund) - (sum of Lines a, b, c and d) | 15,540.04 | | |

**Other Information:**

| Examiner's Signature: Ms. Green - MS 4388 | Employee ID: 29-12033 | Office: Ogden Service Center | Date: 04/12/2010 |
|---|---|---|---|

Consent to Assessment and Collection - I do not wish to exercise my appeal rights with the Internal Revenue Service or to contest in the United States Tax Court the findings in this report. Therefore, I give my consent to the immediate assessment and collection of any increase in tax and penalties, and accept any decrease in tax and penalties shown above, plus additional interest as provided by law.  It is understood that this report is subject to acceptance by the Area Director, Area Manager, Specialty Tax Program Chief or Director of Field Operations.

**PLEASE NOTE:  If a joint return was filed,  BOTH taxpayers must sign**

| Signature of Taxpayer | Date: | Signature of Taxpayer | Date: |
|---|---|---|---|
| By: | | Title: | Date: |

| Catalog Number 23105A | www.irs.gov | Form 4549 (Rev. 5-2008) |
|---|---|---|

# Doc. J

**Form 4340**

**Certificate of Assessments**

**Ellis**

**2007**

## CERTIFICATE OF ASSESSMENTS, PAYMENTS, AND OTHER SPECIFIED MATTERS

---------------------------------------------------------------------

MICHAEL ELLIS                    EIN/SSN:      -8039


TYPE OF TAX: U.S. INDIVIDUAL INCOME TAX RETURN
FORM: 1040      TAX PERIOD: DEC  2007

| DATE | EXPLANATION OF TRANSACTION | ASSESSMENT, OTHER DEBITS (REVERSAL) | PAYMENT, CREDIT (REVERSAL) | ASSESSMENT DATE (23C, RAC 006 ) |
|------|---------------------------|------------------------------------|----------------------------|----------------------------------|
| | ADJUSTED GROSS INCOME 39,311.00 | | | |
| | TAXABLE INCOME 30,561.00 | | | |
| | SELF EMPLOYMENT TAX 5,977.00 | | | |
| **(1)** 01-13-2010 | SUBSTITUTE FOR RETURN 29210-888-00000-0 | 0.00 | | 02-08-2010 **(2)** |
| | ESTIMATED TAX PENALTY 20104408 | 462.94 | | 11-15-2010 |
| | LATE FILING PENALTY 20104408 | 2,288.70 | | 11-15-2010 |
| | ADDITIONAL TAX ASSESSED BY EXAMINATION AUDIT DEFICIENCY PER DEFAULT OF 90 DAY LETTER ASED 20131018 29247-700-00193-0  20104408 | 19,172.00 | | 11-15-2010 |
| **(3)** 11-15-2010 | RENUMBERED RETURN 29247-700-00193-0 | | | |
| | INTEREST ASSESSED 20104408 | 1,553.99 | | 11-15-2010 |
| | FAILURE TO PAY TAX PENALTY 20104408 | 1,576.66 | | 11-15-2010 |
| 01-14-2011 | FEDERAL TAX LIEN | | | |
| 02-07-2011 | MODULE IN FEDERAL PAYMENT LEVY PROGRAM | | | |
| 03-30-2011 | INTENT TO LEVY COLLECTION DUE PROCESS NOTICE LEVY NOTICE ISSUED | | | |

FORM 4340  (REV. 01-2002)              PAGE    1

CERTIFICATE OF ASSESSMENTS, PAYMENTS, AND OTHER SPECIFIED MATTERS
------------------------------------------------------------------------

MICHAEL ELLIS                          EIN/SSN:        -8039


TYPE OF TAX: U.S. INDIVIDUAL INCOME TAX RETURN
FORM: 1040       TAX PERIOD: DEC  2007

| DATE | EXPLANATION OF TRANSACTION | ASSESSMENT, OTHER DEBITS (REVERSAL) | PAYMENT, CREDIT (REVERSAL) | ASSESSMENT DATE (23C, RAC 006 ) |
|------|----------------------------|-------------------------------------|----------------------------|---------------------------------|
| 04-25-2011 | INTENT TO LEVY COLLECTION DUE PROCESS NOTICE RETURN RECEIPT SIGNED | | | |
| 12-08-2008 | Taxpayer Deliquency Notice | | | |
| 11-15-2010 | Statutory Notice of Balance Due | | | |
| 12-20-2010 | Statutory Notice of Intent to Levy | | | |

FORM 4340  (REV. 01-2002)                    PAGE     2

```
           CERTIFICATE OF ASSESSMENTS, PAYMENTS, AND OTHER SPECIFIED MATTERS
---------------------------------------------------------------------------------

MICHAEL ELLIS                          EIN/SSN:         -8039


TYPE OF TAX: U.S. INDIVIDUAL INCOME TAX RETURN
FORM: 1040     TAX PERIOD: DEC  2007
---------------------------------------------------------------------------------

BALANCE        16,054.29

---------------------------------------------------------------------------------
I CERTIFY THAT THE FOREGOING TRANSCRIPT OF THE TAXPAYER NAMED ABOVE IN RESPECT
TO THE TAXES SPECIFIED IS A TRUE AND COMPLETE TRANSCRIPT FOR THE PERIOD STATED,
AND ALL ASSESSMENTS, ABATEMENTS, CREDITS, REFUNDS, AND ADVANCE OR UNIDENTIFIED
PAYMENTS, AND THE ASSESSED BALANCE RELATING THERETO, AS DISCLOSED BY THE
RECORDS OF THIS OFFICE AS OF THE ACCOUNT STATUS DATE ARE SHOWN THEREIN.   I
FURTHER CERTIFY THAT THE OTHER SPECIFIED MATTERS SET FORTH IN THIS TRANSCRIPT
APPEAR IN THE OFFICIAL RECORDS OF THE INTERNAL REVENUE SERVICE.

--------------------------------------------                 ---------------------
SIGNATURE OF CERTIFYING OFFICER:

PRINT NAME:_____ Denise Bradley
                             Accounting Operations Manager
TITLE:_____ Submission Processing
                             Service Wide Delegation of Authority
DELEGATION ORDER:_____ Delegation Order 11-5


LOCATION: INTERNAL REVENUE SERVICE


           ACCOUNT STATUS DATE 06/09/2011

FORM 4340   (REV. 01-2002)                  PAGE      3
```

# Doc. K

**IRS FOIA Response
To Request for SFRs
Klaudia Villegas
Disclosure Manager
September 17, 2013**

DEPARTMENT OF THE TREASURY
INTERNAL REVENUE SERVICE
WASHINGTON, DC 20224

PRIVACY, GOVERNMENTAL
LIAISON AND DISCLOSURE

September 17, 2013

Robert McNeil
1302 Waugh Dr. #498
Houston, TX 77019-3908

Dear Robert McNeil:

I am responding to your Freedom of Information Act (FOIA) request dated August 2, 2013 that we received on August 6, 2013.

You asked for various documents pertaining to you for tax years 2000 through 2012.

For item a, I have provided your Individual Master File (IMF) Complete transcripts.

For Item b, I have researched our records and found no records pertaining to Non Master File. Therefore, there are no documents responsive to this portion of your request.

For item c, I have provided TXMODA for and TXMODN for tax years 2002, 2003, 2004, 2005, 2006, 2008, 2009, 2010 and 2011. I have provided IMFOLT in lieu of TXMOD for tax years 2000, 2001 and 2007.

For item d, you asked for Business Master File for EIN 46-0827522. Tax records are confidential and may not be disclosed unless specifically authorized by law. You must provide the written consent of an individual authorized to act on behalf of the above EIN number before we can consider releasing the records you requested.

For item e, I have researched our records and found no records. Therefore, there are no documents responsive to this portion of your request.

For items f and g of your request, you requested supporting documents authorizing the IRS to file a 1040 or 1040A on your behalf. I have provided a copy of the examination files for tax year 2003, 2004, 2005, 2006, 2008, 2009 and 2010. To the extent you are seeking records that establish the authority of the Internal Revenue Service to assess, enforce, and collect taxes, the Sixteenth Amendment to the Constitution authorized Congress to impose an income tax. Congress did so in Title 26 of the United States Code, commonly known as the Internal Revenue Code (IRC). The IRC may contain

information responsive to portions of your request. It is available at many bookstores, public libraries and on the Internet at www.irs.gov.

For item h, please visit our website at www.irs.gov for additional information.

For item i, you asked for a copy of the documents identified by several Document Locator Numbers (DLN), for the tax year 2002 through 2009. A document is not created for every DLN shown on a transcript. In situations where taxpayers fail to file required income tax returns a document locator number is assigned to create a module on the Master File. The DLN you requested was generated by our Automated Substitute for Return program. This DLN is computer generated and there is no paper document associated with it. Therefore, there are no documents responsive to your request.

Of the 362 pages located in response to your request, I am enclosing 359 pages. I am withholding 16 pages in part and three pages in full for the following reasons:

- The withheld portions are the tax information of other taxpayers. FOIA exemption (b)(3) requires us to withhold information that is specifically exempted from disclosure by another law. The law supporting this exemption is Internal Revenue Code section 6103(a).

- FOIA exemption (b)(7)(C) exempts from disclosure personal information in law enforcement records that if released, could reasonably be expected to constitute an unwarranted invasion of personal privacy.

- I deleted the Discriminant Information Function (DIF) score from the enclosed records. Release of the DIF score would seriously impair IRS assessment, collection, and enforcement proceedings. FOIA exemption (b)(3), supported by Internal Revenue Code section 6103 (b)(2) and (e)(7) exempts this information from release. Disclosure of this information would also reveal law enforcement techniques, procedures and guidelines protected by FOIA exemption (b)(7)(E).

The redacted portions of each page are marked by the applicable FOIA exemptions. This constitutes a partial denial of your request. I have enclosed Notice 393 explaining your appeal rights.

We are providing your documents in electronic format. The enclosed CD contains your documents and is encrypted. The password to open the files is being mailed separately. At this time there is no charge for the enclosed records. If you determine you need me to provide a printed copy of the documents, please call Specialist, Nikki Konstantinidis, at the phone number shown below. You will be charged $.20 per page after an allowance of 100 pages at no charge for printed documents.

If you have any questions please call Disclosure Specialist, Nikki Konstantinidis, ID # 95-00358, at 213-576-3451 or write to: Internal Revenue Service, Disclosure Scanning Operation – Stop 93A, PO Box 621506, Atlanta, GA 30362.  Please refer to case number F13219-0009.

Sincerely,

Klaudia Villegas
Disclosure Manager
Disclosure Office 13

Enclosure
  Responsive Records
  Notice 393

# Doc. L

**IRS Assistant Chief Counsel**

**Internal Memorandum**

**July 29, 1998**

**Internal Revenue Service**

# memorandum

```
CC:DOM:IT&A:4                    SCA 1998-053
CRFrance - TL-N-7959-97WLI3      UILC 6011.00-00
                                      6065.03-00
```

date:   July 29, 1998

to:   District Counsel, Houston
      Attn:  Christina Moss

from:   Assistant Chief Counsel (Income Tax & Accounting)

subject:   Disclaimer Returns
           Significant Service Center Advice

This responds to your request for Significant Service Center Advice dated February 13, 1998, in connection with a question posed by the Austin Service Center.

### Disclosure Statement

**Unless specifically marked "Acknowledged Significant Advice, May Be Disseminated" above, this memorandum is not to be circulated or disseminated except as provided in CCDM (35)2(13)3:(4)(d) and (35)2(13)4:(1)(e).  This document may contain confidential information subject to the attorney-client and deliberative process privileges.  Therefore, this document shall not be disclosed beyond the office or individual(s) who originated the question discussed herein and are working the matter with the requisite "need to know."  In no event shall it be disclosed to taxpayers or their representatives.**

### ISSUE

Whether a complete Form 1040 with an attachment to an otherwise effective penalties of perjury statement [1] (hereafter "addition") is a valid return for federal tax purposes.

### CONCLUSION

A complete Form 1040 with an addition that denies tax liability is not a valid return because the addition negates the penalties of perjury statement.  However, if the addition does

---

[1]  The use of the phrase _otherwise effective penalties of perjury statement_ means the taxpayer signed the statement and did not make a change to it.

- 2 -

not negate the statement, but merely makes a protest against
taxes or other matters, the form is a valid return for federal
tax purposes.

FACTS

A service center receives complete Forms 1040 with additions
in which taxpayers protest the payment of taxes. Taxpayers
usually call attention to the addition by (1) writing an asterisk
on the return, either next to line 53 (total tax amount) or line
64 (the tax amount owed) and (2) inserting on the second page of
the return by lines 61-64 or on the bottom of the second page the
following text:  "The admitted liability is zero.  See Attached
Disclaimer Statement."

In the examples you provided, all the additions state that
the taxpayer denies liability for the tax shown on the Form 1040.
In some cases, the taxpayer also includes $1,000 with the Form
1040 and states in the addition the following: "payment in the
amount of $1,000 as a voluntary contribution."

The service center has experienced some uncertainty in its
disposition of these sorts of forms.  Because of this and the
potential for inconsistent treatment and processing of these
forms, you requested this significant service center advice.

DISCUSSION

Section 6001 of the Internal Revenue Code requires every
person liable for tax to make a return and comply with the rules
and regulations issued by the Internal Revenue Service.

Section 6011 of the Code requires every person liable for
tax imposed by title 26 to make a return according to the forms
and regulations prescribed by the Service.

Section 6065 of the Code and §1.6065-1(a) of the Income Tax
Regulations require any return made under any provision of the
internal revenue laws or regulations to contain or be verified by
a written declaration that it is made under penalties of perjury.

If a taxpayer fails to comply with section 6065 by
submitting a return without the executed penalties of perjury
statement, that return is a nullity.  Lucas v. Pilliod Lumber
Co., 281 U.S. 245 (1930).  For example, in Hettig v. U.S., 845
F.2d 794 (8th Cir. 1988), the court found that the taxpayer's
return was a nullity because striking the words "under penalties
of perjury" negated the penalties of perjury statement.

- 3 -

A taxpayer can also negate the penalties of perjury statement with an addition.  In <u>Schmitt v. U.S.</u>, 140 B.R. 571 (Bank W.D. Okl. 1992), the taxpayers filed a return with the following statement at the end of the penalties of perjury statement, "SIGNED UNDER DURESS, SEE STATEMENT ATTACHED."  In the addition, the taxpayers denied liability for tax on wages.  The Service argued that the statement, added to the "return", qualified the penalties of perjury statement, thus making the penalties of perjury statement ineffective and the return a nullity.  <u>Id.</u> at 572.

In agreeing with the Service, the court pointed out that the voluntary nature of our tax system requires the Service to rely on a taxpayer's self-assessment and on a taxpayer's assurance that the figures supplied are true to the best of his or her knowledge.  <u>Id.</u>  Accordingly, <u>the penalties of perjury statement has important significance in our tax system.  The statement connects the taxpayer's attestation of tax liability (by the signing of the statement) with the Service's statutory ability to summarily assess the tax.</u>

Similarly, in <u>Sloan v. Comm'r</u>, 53 F.3d 799 (7th Cir. 1995), <u>cert. denied</u>, 516 U.S. 897 (1995), the taxpayers submitted a return containing the words "Denial & Disclaimer attached as part of this form" above their signatures.  In the addition, the taxpayers denied liability for any individual income tax.  In determining the effect of the addition on the penalties of perjury statement, the court reasoned that it is a close question whether the addition negates the penalties of perjury statement or not.  The addition, according to the court, could be read just to mean that the taxpayers reserve their right to renew their constitutional challenge to the federal income tax law.  However, the court concluded that the addition negated the penalties of perjury statement.  <u>Id.</u> at 800.

In both <u>Schmitt</u> and <u>Sloan</u> the court questioned the purpose of the addition.  Both courts found that the addition of qualifying language was intended to deny tax liability.

- 4 -

Accordingly, this effect rendered the purported returns invalid. [2]

On the other hand, courts have acknowledged that taxpayers may make additions to the return to exercise their first amendment rights without negating the penalties of perjury statement. For example, in McCormick v. Comm'r, 94-1 U.S.T.C. ¶ 50,026 (E.D.N.Y. 1993), the taxpayer timely filed a complete return and signed it under penalties of perjury. Immediately below the penalties of perjury statement, the taxpayer added the statement "under protest." The Service did not treat the return as a valid return. The court found in favor of the taxpayer finding that the taxpayer was lodging a protest rather than denying tax liability. See also, Todd v. U.S., 849 F.2d 365 (9th Cir. 1988).

These cases highlight the tension between a taxpayer's exercise of first amendment constitutional rights and a taxpayer's statutory obligation to file a tax return under penalties of perjury. If by making the addition the taxpayer both exercises a constitutionally protected right (to protest) and negates the penalties of perjury statement, courts have held that the statutory duty to file a tax return outweighs the small infringement, if any, on a taxpayer's first amendment right to protest. See Sloan, 53 F.3d at 800; Hettig, 845 F.2d at 795-96.

You submitted several redacted Forms 1040 with additions for our consideration. To determine whether an addition to a Form 1040 denies tax liability, the courts analyze the purpose of the addition. In each of the Forms 1040 you submitted for our review, the addition explicitly denies the tax liability set forth on the related return. These additions, therefore, negate the penalties of perjury statements and the Forms 1040 fail to constitute valid returns for federal tax purposes.

When the service center receives a Form 1040 with an addition, we suggest the service center process the form as follows: Upon receipt of the form, the Code and Editing Function

---

[2] Note, however, that in Penn Mutual Indem. Co. v. Comm'r, 32 T.C. 653 (1959), aff'd 277 F.2d 16 (3d Cir. 1960), the taxpayer filed an otherwise facially complete return showing a tax due. The taxpayer attached a letter to the return denying that it owed the tax, claiming the applicable taxing statute as unconstitutional. The court concluded that the taxpayer had filed a valid return. Thus, the court appeared to cast the return as a "no tax" return, meaning the reported tax liability is actually zero, rather than as a nullity. See id. at 668 (Murdock, J., concurring).

- 5 -

at the service center should promptly send the form to the
Examination Function.  If the Examination Function determines
that a taxpayer's addition denies tax liability (and, therefore,
negates an otherwise effective penalties of perjury statement),
the form is not a valid return, and penalties, such as the
failure to file penalty, and interest would apply.  The
Examination Function should contact District Counsel regarding
the disposition of forms containing ambiguous or doubtful
additions.

     Moreover, if the return is not a valid return, the Service
should issue a statutory notice of deficiency for any taxes due
(including any amount determined by the taxpayer).  This practice
will protect the statute of limitations on assessment if a court
subsequently decides that the form is a valid return.

     We trust this advice addresses your concerns satisfactorily.
If you have any questions, please contact Ms. Renay France, an
attorney of my staff, on 202-622-4940.




                              By _____/s/_____
                              Rochelle L. Hodes
                              Senior Technician Reviewer
                              Branch 4


cc:   Assistant Regional Counsel (TL), Midstates Region
      Assistant Regional Counsel (CT), Midstates Region