# UNITED STATES DISTRICT COURT

# DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| v.  § | Criminal No. 18-CR-00039 (WES) |
| § | |
| BILLIE R. SCHOFIELD § | |
|   Defendant § | |

## MOTION FOR RELEASE ON APPEAL BOND

    Now comes Pro Se defendant, Billie R. Schofield (hereinafter Schofield), respectfully requesting this Honorable Court release on appeal bond, pursuant to 18 U.S.C.S. § 3143(b)(l). As set forth below, the defendant satisfies all of the requirements set forth in 18 U.S.C.S. § 3143(6), and should be released without further delay.

    Under § 3143(b)(1), the statute provides that, as a general rule, a person convicted of an offense and sentenced to a term of imprisonment shall be detained pending appeal, unless the judicial officer finds the following:

    (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and

    (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in one of the following:

        a. reversal,

        b. an order for a new trial,

   c. a sentence that does not include a term of imprisonment,{2017 U.S. App. LEXIS 3} or

   d. a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process 18 U.S.C. §3143(6)(1). *"If the judicial officer makes such findings, such judicial officer shall order the release of the person"*

Schofield was released on bond during the proceedings, as this court found and the government did not disagree, **that Schofield was neither a danger to the safety of any other person or the community, and was not a risk to flee,** having fully complied with his conditions for more than two years, his release would be consistent with 3143(A).

Schofield submits the following grounds to support Section (B)(i):

On December 3, 2020, the district court held a hearing (the hearing was held via video Zoom conference), concerning a motion filed by Schofield's Attorney George West {hereinafter West) to withdraw from the case. (Schofield expressly incorporates the entire transcript[1] of the hearing and the motion to withdraw filed by West). West informed the district court that the basis for the motion: *"It's a fundamental ability to communicate"*[2]

*"So I have to come here and say I can't move forward at this juncture"*.[3]

The court first discussed (openly with the government present,) the motion with West, where the court tried to summarily categorize the issue *"...what I'm getting out of this... is that, to cut to the chase, Mr. Schofield has pled guilty. You and he have been having conversations apparently about how the case goes forward from here and he has decided, I take it, that he wants to attempt to withdraw his plea of guilty and you do not feel comfortable*

---

[1] Transcript of Civil Cause for Motion Hearing Before the Honorable William E. Smith United States District Court, dated Thursday, December 3, 2020, 10:00 a.m., 31 pages total
[2] See Hearing Transcript, 12/03/2021, Page 8, Line 10 to 11
[3] See Hearing Transcript, 12/03/2021, Page 8, Line 22 to 23

*filing that motion. So that's an irreconcilable difference that you have with Mr. Schofield. Do I basically have that right?*[4]

West then answers the court "**I have to add some context, your Honor. I think that the concept that's driving the plea reconsideration is broader than you've stated it and may go to the heart of the indictment, so I can't say that rests in that single motion...it goes beyond that and--**"[5]

The court then interjected and said *"well whatever the reasons are for--"* [6]

The court never actually discerned the full extent of the reasons from West, and further stated *"All right. I'm not judging any of that. I'm just trying to get a context to it because think that matters with respect to, if I grant your motion to withdraw, how this goes forward. Because if you and Mr. Schofield have that difference of opinion, then it's highly likely or maybe even certain that any other attorney appointed to represent him is going to have the same problem. So this comes down more to a question of whether you're going to be representing him or he is going to represent himself pro se, because that kind of fundamental breakdown isn't something that is based in your personality conflict or something like that. So that's all I'm trying to do is just put some context on it."* [7] West does not re address the court as far as what he had previously stated that it is more than just that. The government then asserts that this is nothing more than a delay tactic by Schofield, to delay the sentencing, but at the same time does acknowledge there is a *"communication breakdown"*.[8]

Yet Schofield had no knowledge that this motion was filed until he was advised there

---

[4] See Hearing Transcript, 12/03/2021, Page 9, Line 5 to 13
[5] See Hearing Transcript, 12/03/2021, Page 9, Line 14 to 19
[6] See Hearing Transcript, 12/03/2021, Page 9, Line 20 to 21
[7] See Hearing Transcript, 12/03/2021, Page 10, Line 6 to 19
[8] See Hearing Transcript, 12/03/2021, Page 11, Line 11

was a hearing, it was West who identified the breakdown, and filed the motion to ensure Schofield's fundamental right to effective assistance of counsel was preserved.

At this point the court failed to properly consider all of Schofield's options within his rights, for starters, when the District court said that it was likely or even certain no other Attorney could represent Schofield without having the same problem, it was a de facto denial of Schofield's right to appointed counsel, and his right to hire his own counsel.

The Sixth Amendment provides that "in all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense." U.S. Const. Amend. VI. This guarantee is fundamental. *Argersinger v. Hamlin,* 407 U.S. 25, 29-33, 92 S. Ct. 2006, 32 L. Ed. 2d 530 (1972). Its purpose is "to assure fairness in the adversary criminal process." *U.S. v. Morrison,* 449 U. S. 361,364, 101 S. Ct. 665, 66 L. Ed. 2d 564 (1981} (citing *Gideon v. Wainwright,* 372 U .S. 335,344, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963). The right attaches upon formal initiation of adversarial proceedings, such as an indictment, and extends to all critical stages of adversarial proceedings after {2011 U.S. Dist. LEXIS 22} attachment. *Rothgery v. Gillespie County, Tex.,* 554 U.S. 191, 128 S. Ct. 2578, 171 L. Ed. 2d 366 (2008); *Massiah v. U.S.,* 377 U.S. 201, 84 S. Ct. 1199, 12 L. Ed. 2d 246 (1964). Moreover, "[w]here assistance of counsel is a constitutional requisite, right to furnish counsel does not depend on a request." *Carnley v. Cochran,* 369 U.S. 506,513, 82 S. Ct. 884, 8 L. Ed. 2d 70 (1962).

The Sixth Amendment also provides, in pertinent part, that, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his [or her] defense." U.S. Const. Amend. VI. "[A]n element of this right" is the right to counsel of choice - "the right of a defendant who does not require appointed counsel to choose who will represent him [or her]." *United States v. Gonzalez - Lopez,* 548 U.S.

140, 144, 126 S. Ct. 2557, 165 L. Ed. 2d 409 (2006). And the erroneous deprivation of the right to counsel of choice is a structural error not subject to harmless-error analysis. Id. at 150, 152; see also *United States v. Robinson,* 753 F.3d 31, 39 (1st Cir. 2014).

The district court also excluded Schofield's right to counsel of his choice, when it stated it's either West remains on the case or Schofield has to proceed pro se. ("It is hardly necessary to say that, the right to counsel being conceded, a defendant should be afforded a fair opportunity to secure counsel of his own choice."); *Yeboah-Sefah v. Ficco,* 556 F.3d 53, 68 {1st Cir. 2009) (quoting *Wood v. Georgia,* 450 U.S. 261, 271, 101 5. Ct. 1097, 67 L. Ed. 2d 220 {1 981)).

While the right to counsel of choice, however, is not absolute. *United States v. Maldonado,* 708 F. 3 d 38, 42 (1st Cir. 2013). Instead, the right "is circumscribed in several {873 F.3d 52} important respects." *Gonzalez-Lopez,* 548 U.S. at 144 (quoting *Wheat v. United States,* 486 U.S. 153, 159, 108 S. Ct. 1692, 100 L. Ed. 2d 140 (1988)). The Supreme Court has recognized, for example, "a trial court's wide latitude in balancing the right to counsel of choice against the needs of fairness and against the demands of its calendar." Id. at 152 (internal citation omitted); see also *Morris v. Slappy,* 461 U.S. 1, 11-12, 103 S. Ct. 1610, 75 L. Ed. 2d 610 (1 983).

Consequently, district courts "have 'broad discretion ' to control their calendars by granting or denying continuance motions," and "'only {2017 U.S. App. LEXIS 26} an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay violates the right to the assistance of counsel."' *Maldonado,* 708 F.3d at 42 (quoting *Morris,* 461 U.S. at 11-12). The court at a minimum had a duty at the very minimum to raise these two rights and address them in context of the withdrawal motion.

As the hearing progressed the Court then recognized a serious concern where it was clear that West and Schofield both felt they could not move forward and the Court stated: *"...it could be problematic to force both the defendant and Mr. West to proceed to sentencing. I'm a little uncomfortable with that, and I actually wonder if that doesn't create an issue on appeal, that would not exist if this motion were allowed and Mr. Schofield were allowed to exercise his constitutional right to represent himself. So why wouldn't that be the more prudent course?"* [9]

Again the court completely failed to acknowledge Schofield's right to another court appointed counsel, or his right to hire his own counsel. The government then asserts the court is correct, (AUSA Hebert) and that her co-counsel was saying that Mr. Schofield shouldn't get another appointed attorney, and that *"... he is not entitled to the taxpayer-paid attorney of his choice".* [10]

Yet, at this point, West has not done anything except attempt to withdraw from the case. Furthermore, the government's argument merely hinges on their opinion of Attorney West and stated: *"He has been given an excellent attorney… with more experience that probably Mr. O'Donnell and I put together…. And there is no reason for him to get another attorney courtesy of the taxpayers".* [11]

However the government's or the court's opinion of the Attorney has no place in the court's decision as to whether there is a breakdown in the Attorney client relationship, even the very best Attorneys have clients where there are breakdowns in communication, leading to irreconcilable differences, as such the court's, the government's or anyone else's opinion of an attorney's skill set has no material bearing on whether there is a breakdown, and contrary to the

---

[9] See Hearing Transcript, 12/03/2021, Page 12, Line 1 to 8
[10] See Hearing Transcript, 12/03/2021, Page 12, Line 17 to 18
[11] See Hearing Transcript, 12/03/2021, Page 12, Line 19 to 22

court's statement, that if this problem exists with West it is likely or even certain to occur with another attorney, is just not an appropriate conclusion factored into the court's decision making process. In fact, given the high regard of West by both the Court and the government, that his assessment of the relationship was correct, and that it was not born from ill intentions by either West or Schofield.

The proceeding continues and the court now starts to speak to Schofield, the first thing Schofield states to the court is that *"there's certain information I would like to share with you, but I hesitate in doing so with the government here in the room. I'm a little reluctant to answer too much to your questions, unless the government is excused from the room."* [12]

The court then stated *"I don't know how the government would feel about me having an ex-parte communication with both Mr. West and Mr. Schofield ..."* [13]

The government contested the court conducting an ex-parte period, continuing to argue against Schofield getting another attorney **"I think the Court should be firm with Mr. Schofield that he is not getting another attorney".** [14] [It is noteworthy to point out that as of this point in the hearing neither Schofield nor West had requested another attorney, as discussed later in this motion it was West's duty to protect Schofield's right to counsel, but he was laboring under a conflict]

The court however stated *"But in an abundance of caution, if there's something Mr. Schofield thinks he needs to share , I'm just wondering if you have any objection. But maybe we don't need to answer that question right now..."* [15]

---

[12] See Hearing Transcript, 12/03/2021, Page 14, Line 15 to 19, 21 to 23
[13] See Hearing Transcript, 12/03/2021, Page 15, Line 2 to 5
[14] See Hearing Transcript, 12/03/2021, Page 15, Line 14 to 16
[15] See Hearing Transcript, 12/03/2021, Page 16, Line 3 to 8

The court then summarizes the situation as being back to a single motion to withdraw, which West stated earlier that it was more than that, the court then touches on the fact that there's nothing before the court regarding Schofield seeking a new lawyer to replace West, but stated even if there were I don't see any basis for appointing a new attorney for you, leaving Schofield to keep an Attorney to which there is no attorney client relationship with, or go pro se. [West had a continued duty not to just seek withdrawal but to also argue to protect Schofield's right to court appointed counsel.]

At this point the court appears to have accepted the fact that West's motion to withdraw should be granted, that there is a breakdown in the relationship, but somehow the breakdown supporting withdrawal, now only affords Schofield one option, the option of self-representation. The district court erred when it stated there was no basis for appointing new counsel, when it clearly recognized withdrawal is appropriate. In fact there was *no basis for not appointing new counsel*.

Schofield continued to tell the court he did not feel comfortable representing himself and asserting his right to effective assistance of counsel, yet the denied Schofield new court appointed counsel and failed to advise him of his right to hire his own counsel. The court again relied on West's reputation as one of the *"best defense lawyers we have in the community"* [16] and giving Schofield the ultimatum of continuing with West, or proceeding pro se, to which at the conclusion of the hearing West was still the Attorney on the case. As further explained below this hearing resulted in several separate and distinct violations accordingly Schofield address each one in turn.

---

[16] See Hearing Transcript, 12/03/2021, Page 22, Line 17 to 18

### THE DISTRICT COURT FAILED TO CONDUCT AN ADEQUATE INQUIRY

The district court failed to conduct an adequate inquiry into nature and circumstances of the conflict between West and Schofield. See *United States v. Reyes,* 352 F.3d 511, 515 (1st Cir. 2003), *United States v. Woodard,* 291 F.3d 95, 107 (1st Cir. 2002) as here Schofield voiced to the court that he wanted to speak to the court and fully explain the situation, but hesitated to do so with the government present, as such Schofield was deprived an opportunity for a thorough inquiry by the court. (holding inquiry adequate where judge asked defendant why he wanted new counsel}; *Woodard,* 291 F.3d at 108 (holding inquiry adequate where district court inquired as to the reasons for the motion); *Allen,* 789 F.2d at 93 (holding inquiry adequate where court gave defendant opportunity both to voice his concerns and to explain reasons for motion) .

Additionally West was never afforded his opportunity to add additional context to the situation, which he asserted to the court he would have to do so, but the court never revisited this with West. Therefore the district court failed to conduct an adequate inquiry as required under *United States v. Allen,* 789 F.2d 90, 92 (1st Cir . 1986) and such an error is structural, "[A] denial of this Sixth Amendment right is a structural error not subject to harmless error analysis, See" *Dixon v. Warden, S. Oh. Corr. Facility,* 940 F.Supp. 2d 614, 625 (S.D. Ohio Feb. 11, 2013) (citing *Gonzalez-Lopez,* 548 U.S. at 148).

### THE DISTRICT COURT ABUSED ITS DISCRETION IN ITS DENIAL OF APPOINTMENT OF NEW COURT APPOINTED COUNSEL

The District court failed to consider and properly follow the three fact or s it must consider, in whether to appoint new counsel."(1) the timeliness of the motion; (2) the adequacy of the court 's inquiry into the defendant's complaint; and (3) whether the conflict between the defendant and his counsel was so great that it resulted in a total lack of

communication preventing an adequate defense ." *United States v. Mejfa-Encarnacion,* 887 F.3d 41, 47 (1st Cir. 2018) (quoting *Kar,* 851 F. 3d at 65); see also *Allen,* 789 F.2d at 92.

Certainly as previously stated the court's inquiry was inadequate, and the district court was certainly prepared to grant West's request to withdraw (identifying a breakdown in the relationship), but limited Schofield to only proceeding pro se. Remember this court was faced with a motion to withdraw from West, and given the high regard given to West by both the Court and the government, the District Court appeared to give credence to West's assessment of the Attorney Client relationship being beyond repair, but on the other hand found that situation somehow eroded Schofield' s right to court appointed counsel.

The court acknowledged Schofield's right to appointment of a new attorney (appointed by the court and paid for by the taxpayers), [but stated he was not sure if that was in front of him] (something West had a duty to still do), but stated even if it was the court didn't find good cause to appoint him new counsel, thus the court ruled on the appointment of counsel without a basis for its decision. If West and Schofield's relationship was broken beyond repair that would appear to be good cause to allow West to withdraw and appoint Schofield a new attorney, but the record is absent a sufficient finding of fact and applicable law to deny Schofield new counsel.

Simply put, West, who was categorized by the court as one of the best defense attorney's in the community, set forth he could not do his duty, and should be removed from the case, to which the district court to, if and only if, Schofield agreed to represent himself, something Schofield did not want to do. Schofield lost his right to effective assistance of counsel, because of a breakdown with his appointed attorney, but this was not a sufficient basis to deprive him of counsel going forward, after all this was not a case where Schofield had already been given

replacement counsel, he was not gaining any advantage by obtaining new counsel. As such Schofield was denied the effective assistance of counsel through critical stages of his criminal proceeding, violating his Six th Amendment, because the District court's denial was an abuse of discretion.

## SCHOFIELD WAS DENIED CONFLICT FREE COUNSEL

The Sixth Amendment of the United States Constitution provides that in {358 F. Su pp. 3d 188} all criminal prosecutions "the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. Amend. VI. Two correlative rights emanate from the Sixth Amendment: (1) the right to retain counsel of one's choice, and (2) the right to "representation that is free from conflicts of interest." See *Powell v. Alabama,* 287 U.S. 45, 53,535. Ct 55, 77 L. Ed. 158 (1932).

The right exists "not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial." *United States v. Cronic*, 466 U.S. 648,658, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984). The right to counsel includes "a correlative right to representation that is free from conflicts of interest." *Wood v. Georgia*, 450 U.S. 261, 271, 101 S. Ct 1097, 67 L. Ed. 2d 220 (1981). And the right to conflict-free counsel also adheres to the Due Process Clause. See id. at 271-72 (noting that petitioners' due process rights may {2006 U.S. Dist. LEXIS 19} have been violated where counsel "may not have pursued their interests single-mindedly").

Under the familiar standard set forth in *Strickland v. Washington,* 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), a defendant alleging ineffective assistance of counsel must, as a general matter, demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Some exceptions exist; thus, "where assistance of counsel *has been* denied entirely or during a critical stage of the proceeding," the defendant need not show *prejudice.* *Mickens v. Taylor,* 535 U.S. 162, 166, 122

S. Ct. 1237, 152 L. Ed. 2d 291 (2002). Until recently, federal courts generally applied a rule of automatic reversal, without requiring a showing of prejudice, in cases where an actual conflict of interest existed.

  Here Schofield was still represented by West, yet West was laboring under a conflict, when he had to address his own withdrawal. West cannot and did not protect Schofield's rights moving forward; or his right to court appointed counsel, or his right to hire his own counsel, but instead was narrowly focused on himself being removed from the case, because if he was successful, the future of Schofield's case would not be West's concern. Indeed the court recognized that nothing was before it on the issue of a new court appointed lawyer, because West failed to address that issue.

  To properly ensure that Schofield had continued conflict free counsel, a temporary attorney should have been appointed for Schofield at this hearing. Courts cannot allow an attorney to represent their own interests and his client's best interest simultaneously when the issue concerns the continued representation of that client. It is axiomatic that "the assistance of counsel is among those 'constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error'. *"Holloway v Arkansas,* 435 US 475,489, 55 L Ed 2d 426, 98 S Ct 1173 (1978) (quoting *Chapman v California,* 386 US 18, 23, 17 L Ed 2d 705, 87 S Ct 824, 24 ALR3d 1065 (1967)).

  The right to counsel's **_undivided loyalty_** is a critical component of the right to assistance of counsel; when counsel is burdened by a conflict of interest, he deprives his client of his Sixth Amendment right as surely as if he failed to appear at trial. See *Holloway v Arkansas,* supra, at 490, 55 L Ed 2d 426, 98 S Ct 1173 ("The mere physical presence of an attorney does not fulfill the Sixth Amendment guarantee when the advocate's conflicting obligations have effectively

sealed his lips on crucial matters").

For this reason, a defendant who shows an actual conflict need not demonstrate that his counsel's divided loyalties prejudiced the outcome of his trial. *Cuyler v Sullivan,* supra, at 349-350, 64 L Ed 2d 33 3, 100 S Ct 1 708. The right to conflict-free counsel is simply too important and absolute "to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial." *Glasser v United States,* 315 US 60, 76, 86 L Ed 680, 62 S Ct 457 (1942); accord, *Cuyler v Sullivan,* supra, at 349, 64 L Ed 2d 333, 100 S Ct 1708.

We should be no more willing to countenance nice calculations as to how a conflict adversely affected counsel's performance. "The conflict itself demonstrate[s] a denial of the 'right to have the effective assistance of counsel.' "*Cuyler v Sullivan,* supra, at 349, 64 L Ed 2d 333, 100 S Ct 1708 (quoting *Glasser v United States,* supra, at 76, 86 L Ed 2d 680, 62 S Ct 457).

Furthermore, West also violated the witness advocate rule, as once this issue arises West turns into a witness to the events that transpired between him and Schofield, and as such cannot also be an advocate. The advocate-witness rule generally bars an attorney from appearing as both an advocate and a witness in the same litigation." *United States v. Angiulo,* 897 F.2d 1169, 1194 (1st Cir. 1990)

Therefore, where West's loyalties were divided, causing him to labor under a conflict, Schofield was deprived counsel at a very critical stage, and reversal of the conviction is warranted. The conflict explains why such an experienced Attorney failed to set forth an argument supporting the appointment of new court counsel, or acknowledging the right to hire counsel of one's choice.

When a concern arises about a breakdown in an Attorney client relationship, the first step a court must take is to ensure that the defendant's interest are represented not by the competing

interests of the involved attorney, but by separate counsel who is free from any conflicts.

### SCHOFIELDS RIGHT TO COUNSEL OF ONE'S CHOICE

The Sixth Amendment provides, in pertinent part, that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his [or her] defense." U.S. Const. Amend. VI. "[A]n element of this right" is the right to counsel of choice - "the right of a defendant who does not require appointed counsel to choose who will represent him [or her]." *United States v. Gonzalez-Lopez,* 548 U.S. 140, 144, 126 S. Ct. 2557, 165 L. Ed. 2d 409 (2006). And the erroneous deprivation of the right to counsel of choice is a structural error not subject to harmless-error analysis. Id. at 150, 152; see also *United States v. Robinson,* 753 F.3d 31, 39 (1st Cir. 2014).

The District court failed to acknowledge that Schofield also had the right to hire counsel of his own choice. [Notably, West also failed to argue this point for Schofield.] The court conducted no inquiry into whether Schofield may be able to, or even if he had a desire to try and hire counsel, and most importantly whether Schofield was ever even advised of this right.

### THE DISTRICT COURT ABUSED ITS DISCRETION WHEN IT FAILED TO ADDRESS SCHOFIELD'S MOTION ON INEFFECTIVE ASSISTANCE OF COUNSEL.

The District court failed to address numerous motions filed by Schofield including one for ineffective assistance of counsel, to which the First Circuit addressed in *United States v. Ortiz-Vega* 860 F.3d 20; 2017 US App LEXIS 10 9992017 (whether a district court should rule on an ineffective assistance claim prior to sentencing and if so, under what circumstances), "as noted by Ortiz, we have indicated in the context of claims involving attorney-client disputes that" "[w]here the accused voices objections to appointed counsel, the trial court should inquire into the reasons for the dissatisfaction." *United States v. Prochilo,* 187 F.3d 221, 229 (1st

Cir. 1999) (quoting *United States v. Allen,* 789 F.2d 90, 92 (1st Cir. 1986)). ***The failure to conduct such an inquiry constitutes an abuse of discretion. Id. at 229*** (" . . . Because no inquiry was made, this court has no basis in the record for sustaining the trial court's rulings. Accordingly, we are constrained by the Sixth Amendment to direct that Prochilo's conviction be set aside and that this case be remanded to the district court for further proceedings."). {2 017 U.S. App. LEXIS 19}

We have similarly held, within the context of alleged conflict of interest situations, "that the district court must inquire into each instance of joint representation of multiple defend ant s, and must advise each defendant of his right to separate counsel." *United States v. Coneo-Guerrero,* 148 F. 3d 44, 47 (1st Cir. 1998). We therefore require trial courts to "inquire diligently whether [defendants] have discussed the risks with their attorney, and whether they understand that they may retain separate counsel, or if qualified, may have such counsel appointed by the court and paid for by the government." *United States v. Foster,* 469 F.2d 1, 5 (1st Cir. 1972); see also *United States v. Cardona-Vicenty,* 842 F.3d 766, 772 (1st Cir. 2016), cert. denied, 137 S. Ct. 1238, 197 L. Ed. 2d 474 (2017) ("[G]iven the 'ubiquitous and insidious' risks of multiple representation, the Sixth Amendment imposes a duty on trial courts to investigate a defendant's timely objections to joint representation and to inquire into the propriety of multiple representation whenever the trial court 'knows or reasonably should know that a particular conflict exists.' " (quoting *United States v. Hernandez-Lebron,* 23 F. 3d 600, 603-04 (1st Cir. 1994))). Accordingly, the importance of a district court's inquiry into attorney-client disputes and conflicts of interest is well established.

Two of our sister circuits have ruled on the precise issue presented here. See *United States v. Steele,* 733 F.3d 894, 897 {9th Cir. 2013); *United States v. Brown,* 623 F.3d 104, 112-14 (2d

Cir. 2010). In *Brown,* the Second Circuit held that the district court should have {2017 U.S. App. LEXIS 20} ruled on an ineffective assistance claim prior to sentencing where the defendant's first counsel (who had been accused of ineffective assistance) had already been relieved and the defendant was asserting that his previous counsel failed to inform him of a 20-year plea offer. 623 F.3d at 112-14 ("As a matter of first impression, we hold that when a claim of ineffective assistance of counsel is first raised in the district court prior to the {860 F.3d 30} judgment of conviction, the district court may, and at times should, consider the claim at that point in the proceeding" and there was "no good reason to postpone inquiry into the merits of [the defendant's] claim.").

The Second Circuit recognized that while the appellate court typically does not hear ineffective assistance claims on direct appeal (unless the record is sufficiently developed), a trial court need not invoke the "appellate court's rubric and require a defendant to use his one §2255 motion to raise an ineffective assistance claim post -judgment, particularly when the district court

The Ninth Circuit has since adopted the Second Circuit's holding, "adopt[ing] the rule in *Brown* that {2017 U.S. App. LEXIS 21} 'when a claim of ineffective assistance of counsel is first raised in the district court prior to the judgment of conviction, the district court may, and at times should, consider the claim at that point in the proceeding."'*Steele,* 733 F.3 d at 897 {quoting *Brown,* 623 F. 3d at 113) ("Though district courts have heard prejudgment ineffective assistance of counsel claims on occasion, see, e.g., *United States v. Del Muro,* 87 F.3d 1078, 1080 (9th Cir. 19 96}, the First circuit agreed with the Second Circuit 's decision in *United States v. Brow n,* that a district court need not 'invoke an appellate court's rubric and require a defend ant to use his one §2255 motion to raise an ineffective

assistance claim post judgment, particularly when the district court is in a position to take evidence, if required, and to decide the issue prejudgment."' (quoting *Brown,* 623 F.3d at 113)).

The First Circuit went on in *Griz-Vega* to say "We agree with our sister circuits and similarly hold that "when a claim of ineffective assistance of counsel is first raised in the district court prior to the judgment of conviction, the district court may, and at times should, consider the claim at that point in the proceeding." *Brown,* 623 F. 3d at 113. And the court's failure to do so may constitute an abuse of discretion. See id. at 112 {"The government argues unconvincingly that given the Supreme Court's and this Court's general aversion to deciding ineffective assistance claims on direct review, 'the district court's refusal to entertain [the defendant's] motion before he was sentenced cannot be deemed an abuse of discretion.' ***We disagree.'').***

As noted by the Second Circuit, "[w]e are mindful that district courts face competing considerations in deciding whether it is appropriate to inquire into the merit s of such claims prior to judgment, including principally the potential disruption of the proceedings, especially if the attorney against whom the complaint is directed continues at the time to represent the defendant." Id. at 113. We similarly observe that "[t]he decision to interrupt the pre-judgment {2017 U.S. App. LEXIS 23} proceedings to in quire into the merits of an ineffective assistance of counsel claim may depend on, among other things, whether the court ***would need to relieve the*** *defendant's attorney, or in any event, to appoint new counsel in order to properly adjudicate the merits of the claim."* Id. The court may also take {860 F.3d 31} into consideration whether the defendant's "claim [is] broad-based and the evidentiary record to consider it [is] sorely lacking," as well as "whether the interests of justice and judicial economy would be served by

delaying the proceedings" Here the court made no inquiry into the motion, exactly the type of action or (inaction) that constitutes abuse of discretion.

## CONCLUSON

Schofield satisfies the statutory requirements for release pursuant to 18 U.S.C. §3143(6). *United States v. Colon-Munoz,* 292 F.3d **18,** 20 (1st Cir. 2002).

First, "by clear and convincing evidence that Schofield is not likely to flee or pose a danger to the safety of any other person in the community if released." 18 U.S.C. § 3143(b)(1)(A). The District Court held this position throughout his proceeding.

Second "the appeal is not for the purpose of delay and raises a question of law or fact likely to result in reversal" 18 U.S.C. § 3143(b)(1)(B). As such defendant who meets both of these criteria is eligible for release pending appeal. Schofield has presented several serious issues, these issues are structural, and not subject to the harmless error provision, and mandate reversal. It is for all these reasons Schofield asks that this court order his release subject to the same conditions he was previously released upon without further delay.

Respectfully submitted,

By: *[signature]*

Billie Russell Schofield

## Verification/Declaration

Comes now Billie-Russell: Schofield, declaring under penalty of perjury, pursuant to 28 U.S.C. §1746, that "All the facts stated in the foregoing "**MOTION FOR RELEASE ON APPEAL BOND"** are absolutely true and correct to the very best of my knowledge and belief, that I have personal knowledge of almost every fact alleged, that they are material, admissible, and that I am competent to testify thereto.

Further, not knowing whether Rhode Island, where I live, is technically "within" or "without" "the United States", since that entity has been defined in many varying ways, I request the Court makes that determination.

That said, if Rhode Island is "without" "the United States", as that entity is defined by this Court: "I declare (or certify, verify, and state) under penalty of perjury, pursuant to 28 U.S.C. §1746 that every material fact, and inference derived therefrom, presented in the foregoing document, is true and correct."

If Rhode Island is "within" "the United States", its territories, possessions, or commonwealths, as that entity is defined by this Court: "I also declare (or certify, verify, and state) under penalty of perjury that every material fact, and inference derived therefrom, presented in the foregoing document, is true and correct."

So HELP ME GOD.

Executed on March 2, 2021

By: *[signature]*
Billie Russell Schofield

## CERTIFICATE of SERVICE

      I certify that on March 2, 2021, I filed this "**MOTION FOR RELEASE ON APPEAL BOND**" by email, in accordance with COVID-19 protocols, and that the participants in the case that are registered CM/ECF users will be served electronically by the CM/ECF system. I further certify that a copy of the foregoing document was mailed via U.S. Mail or other carrier to the persons listed below, on or about March 2, 2021.

Mr. Monty Wilkinson
Acting United States Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C. 20530

Mr. Richard E. Zuckerman
Deputy Assistant Attorney General
Tax Division
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C. 20530

By: *[signature]*

Billie Russell Schofield